**22 CV 00975**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARMINE P. AMELIO<br><br>and ALFONSO AMELIO,<br><br>Plaintiff,<br><br>v.<br><br>GALIA HOURI<br><br>and EYAL RONEN<br><br>Defendants. | CIVIL ACTION NO.:<br><br>*Civil Action*<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

**NOW COMES** Plaintiffs, CARMINE P. AMELIO (C. Amelio) and ALFONSO AMELIO (A. Amelio), individually (collectively "Amelios") hereby submits this Complaint against the above named Defendants, and in support thereof, states as follows:

**BASIS FOR JURISDICATION**

1. Under 28 U.S.C. § 1332, federal courts may hear cases in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000. That the amount of this claim exceeds the jurisdictional limit of the District Court of New York, Southern District and is the appropriate venue for this claim because the breach of contract, breach of fiduciary duty, property damage, impersonation, tampering with mail, unauthorized access to plaintiffs' internet account, harassment and negligence occurred in Bronx County, NY.

**FACTS**

2. That Galia Houri (Galia)(guest) is a resident of New York.

1

3. That Eyal Ronen (Eyal) is a resident of New York.

4. That Alfonso Amelio (A. Amelio) resides in both New York, NY and New Milford, CT.

5. That Carmine Amelio (Carmine)(C. Amelio)(Landlord) resides in both New York, NY and New Milford, CT.

6. That this action is being brought against the above named defendants for breach of contract, breach of fiduciary duty, property damages, impersonation, tampering with mail, unauthorized access to plaintiffs' internet account, harassment and negligence.

7. On July 28, 2020 Galia Houri (Galia)(guest) booked a reservation for the 2nd and 3rd floors of plaintiff's home for 30 days from check in on July 31, 2020 through check out on August 30, 2020, for the amount of $3,250.00 and extended every 30 days thereafter, at all times under plaintiff's AirBnB terms and conditions, through August 28, 2021. Carmine Amelio, as Host/Landlord allowed Gaila's husband, Eyal Ronen (Eyal), with his authorization and permission to stay at my home with Galia.

8. On 6/9/21 Galia and Eyal intentionally and negligently clogged my sewer line with plastic gloves, non disposable wipes and paper towels. The plumber cost alone was $800.00 which Galia and Eyal refused to pay.

9. On August 28, 2021 Galia and Eyal failed to check out, pursuant to extended short term agreement made on July 29, 2021 for check in on July 30, 2021 through check out on August 28, 2021.

10. On August 31, 2021, Eyal texted Carmine and advised that they were looking for a new place and only needed a two weeks booking extension. On September 1, 2021, C. Amelio texted Galia their requested extension agreement for check in August 28, 2021 through

check out September 10, 2021 for a total payment in the amount of $1,516.17 but they failed to make payment.

11. On or about September 2, 2021, C. Amelio called Optimum Cable to change the passcode to his internet account and terminated the guest internet access due to their failure to pay the extend short term agreement.

12. On September 3, 2021, C. Amelio received a text from Eyal demanding restoration of the internet service.

13. On September 10, 2021, C. Amelio observed and spoke to an unknown person who came to the door at my home and claimed to be an Optimum Cable Company employee. He stated that he was instructed to move my service from my private secured first floor to the second floor where my Galia was staying. C. Amelio had not made any requests to move his service and he advised him that he did not provide Optimum permission for moving his internet to the second floor and that he was not authorized to do work and C. Amelio instructed him to leave my premises.

14. On September 10, 2021, C. Amelio called optimum and was informed that they had received a call from the account holder with a request to move my modem from his private secured 1st floor to the 2nd floor where my guests were staying. Neither C. Amelio nor his brother A. Amelio called Optimum on 9/7/21 at 3:27 pm and C. Amelio alleges that Eyal, Galia or someone on their behalf, instructed by them called optimum impersonating C. Amelio or my brother, which is a crime and unlawfully gained unauthorized access to my Optimum Cable account, which is also a crime. Optimum records all conversations and they keep records and recording of the caller, conversation and the caller phone identification.

3

15. On 9/14/21, C. Amelio observed the Galia and Eyal leaving my home with large travel suitcases.

16. On 9/15/21, C. Amelio observed suspicious activity at his home as someone who had trespassed, removed his "no trespassing signs" and blocked the cameras at his private rear entrance that view the outdoor rear of my home with chairs and boxes. C. Amelio also noticed water in my private lower level which appeared to be coming from the 2nd floor where the guests had been staying after departing on 9/14/21.

17. On 9/16/21 C. Amelio went to the 45th Police Precinct to file a complaint against my guests for alleged impersonation and unauthorized access to my Optimum internet account and the breach of my rear security cameras by an unknown person at my home. The police refused to take his complaint but instead made a harassment report under Police Complaint# 2021455052. C. Amelio also advised the police that I would be securing my home and posting "No Trespassing" signs.

18. On 9/16/21 C. Amelio texted both Galia and Eyal and advised them that he filed a police complaint for their conduct and criminal activity at my home and that they were no longer permitted at my home located at 3228 Schley Avenue, Bronx, New York, 10465 and that he would press charges for trespassing. C. Amelio advised them to provide an address for their belongings that were removed from his home. C. Amelio also advised them not to tamper with his mail and mailbox, which was never permitted or authorized. C. Amelio did not get any response to my text messages from either Galia or Eyal. In addition to intentional negligence in clogging my sewer line and water leak, C. Amelio discovered the following damages:

- Unauthorized alteration to my walls

- Damage to my cabinets
- Damages to my kitchen and flooring
- Cosmetic machine and manufacturing
- Security violations and internet
- Three damaged mattresses and removed of protective liners
- Damage wifi/passcode door locks
- Damaged screen door
- Damages to my dining room indoor chairs, which were left outside to rust and cause water damage to the cushions

19. On 9/16/21 at approximately 11:26 pm, C. Amelio observed Jane Doe trespassing and attempting to enter my private lower entry door. C. Amelio had not previously seen Jane Doe at his home or captured the unknown female trespasser on any of my outdoor surveillance cameras and Eyal and Galia were the only guests authorized and permitted to be at his home, pursuant to my AirBnB terms and conditions.

20. On 9/17/21, C. Amelio observed an alleged locksmith Leiroze Mizrahi owner operator with business name Instalock locksmith arrive at my home and he, along with Jane Doe, broke into and entered my home by drilling and destroying my locks without any authority or permission and Mr. Mizrahi aiding and abetting by acting upon the direction of Jane Doe trespasser.

21. On 9/17/21 C. Amelio called 911 and the police arrived at my premises while Mr. Mizrahi and Jane Doe were still at my home.

22. On 9/17/21, C. Amelio observed my neighbor Nicholas Blasone who, based on my conversation with Officer Hasan, provided false testimony regarding Jane Doe.

23. On 9/17/21 Officer Hasan called C. Amelio and based on misrepresentations and false statements by Nicholas Blasone and Jane Doe, allowed Jane Doe to stay in my home after breaking and entering, without any evidence or documentation and despite my testimony

5

while he appeared to weigh heavy on Nicholas Blasone's false testimony regarding Jane Doe.

24. On 9/30/21 C. Amelio emailed an Audio preservation letter to Optimum Cable pursuant to Police Complaint# 2021455052, Optimum Escalation Control# 9464405.

25. On 10/1/21 C. Amelio observed Jane Doe trespass and had illegally parked her Ford Prius, New York Plate Number KHA-9319 in his driveway, despite my posted signs: "No Parking - Unauthorized vehicles will be Towed Away at vehicle owner's expense" and the rear of her vehicle was also parked on the sidewalk. C. Amelio subsequently called 911 and the Police ticketed her vehicle and I also called a towing service and they towed her vehicle away from my driveway.

26. On 10/7/21, C. Amelio called the 45th Precinct to complain that Jane Doe was trespassing and illegally occupying his home and that he had not heard from or seen Galia or Eyal since 9/14/21. C. Amelio was transferred to Detective Anthony Corrado who he spoke to for near 45 minutes and C. Amelio was within his rights and he instructed C. Amelio to secure his home. C. Amelio explained to Detective Corrado that he was concerned for my safety for entering his home while Jane Doe was present and Detective Corrado stated that he would arrange for the assistance of Sergeant Major to escort him and help me with securing his home and reposting "No Trespassing" signs.

27. Pursuant to Detective Corrado's instructions, C. Amelio met Sergeant Major on 10/8/21 who arranged for Police escorts Officer Perez and Office Sugrim to assist me in securing his home.

28. On 10/8/21, at approximately 11:20 AM, C. Amelio met Officer Perez and Office Sugrim to secure his home and post "No Trespassing" signs. Jane Doe was not present at my home during that time.

29. On 10/8/21, at approximately 8:38 PM, C. Amelio observed Jane Doe attempting to enter my home and he called 911 when it appeared that she was not leaving the premises. C. Amelio also observed Jane Doe entering his neighbor Nicholas Blasone's home several times. The Police from the 45th Precinct arrived at the premises at approximately 1:00 AM on October 9, 2021. C. Amelio observed Jane Doe and Nicholas Blasone talking to the Officers. Officer Hasan called C. Amelio several times and he subsequently informed Jane Doe that she was not permitted or allowed to enter my home and he asked C. Amelio if he could meet Jane Doe so she could retrieve her belongings. C. Amelio agreed to meet Jane Doe the same day after 10:00 AM so she could retrieve her belongings.

30. On 10/9/21 at approximately 11:22 AM, C. Amelio met Jane Doe so she could retrieve her belongings but she refused to do so and instead proceeded to verbally harass him. C. Amelio advised and stated that if she refused to retrieve her belongings that hewould be leaving the premises; which he did.

31. On 10/9/21, C. Amelio sent Detective Corrado an email providing video evidence and related documentation of the above.

32. On 10/11/21 at approximately 11:22 AM, C. Amelio observed Galia and Eyal at his premises for the first time since 9/14/21 and whom I had not seen or heard from since 9/14/21.

33. On 10/12/21 C. Amelio received a call from Detective Corrado with conflicting statements regarding his testimony and he instructed me to let Galia and Eyal back into

7

his home. C. Amelio believes that Galia and Eyal made false statements to Detective Corrado and it appears that he acted upon the same. In addition, Detective Corrado refused to explain the disappearance of Galia and Eyal for nearly thirty (30) days without any correspondence and any explanation regarding Jane Doe trespasser. Galia and Eyal had requested a two week booking extension from check in on 8/28/21 to check out on 9/11/21, which was not paid, and subsequently moved out on 9/14/21. On 9/17/21 C. Amelio observed locksmith Leiroze Mizrahi aiding and abetting trespasser Jane Doe breaking and entering his home without my authority or permission. Galia and Eyal relinquished possession on 9/14/21 and Jane Doe trespasser was not a tenant authorized or permitted to reside in my home. Based on Galia and Eyal's alleged false statements to Police and Detective Corrado, C. Amelio was forced and coerced under duress by the police to provide keys and allow Galia and Eyal access and entry into his home, along with Jane Doe, who was not authorized or permitted in his home and C. Amelio was forced to remove his new guest in possession that was occupying and staying at my home.

34. On 10/14/21 I was unlawfully arrested by Office Bernadette Corey for illegal eviction.

35. Subsequently Galia filed four petitions in Landlord-Tenant court with false statements and allegation, including false reporting of income in order to obtain free legal service from Legal Aid Society, represented by attorney Max Reinhardt, which were filed in retaliation and meant to harass plaintiffs.

36. That as a direct and proximate result of the Defendants breach of contract, breach of fiduciary duty, property damage, impersonation, tampering with mail, unauthorized

access to plaintiffs' internet account, harassment and negligence the Amelios suffered irreparable harm.

37. That all of the injuries, damages, and irreparable harm sustained by the Amelios resulted from breach of contract, breach of fiduciary duty, property damage, impersonation, tampering with mail, unauthorized access to plaintiffs' internet account, harassment and negligence.

38. That as a direct and proximate result of breach of contract, breach of fiduciary duty, property damage, impersonation, tampering with mail, unauthorized access to plaintiffs' internet account, harassment and negligence the Amelios suffered irreparable harm, conscious pain and suffering, and other damages.

### COUNT I: Breach of Contract/ Breach of Fiduciary Duty

The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-38 above.

39. That the Defendants breach of contract and breach of fiduciary duty directly caused irreparable harm and damages to the Amelios.

40. That as a direct result of breach of contract and breach of fiduciary duty by the Defendant, the Plaintiffs sustained irreparable harm and damages, to include but not limited to, mental anguish, emotional pain and suffering.

**WHEREFORE:** The Plaintiffs individually, claim monetary damages against the Defendant in an amount that exceeds the jurisdiction of the District Court of New York, Southern District, to be determined at trial, plus costs, and for any further relief that this Honorable Court determines necessary and appropriate.

**COUNT II Property Damage**

The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-28 above.

41. That the Defendants property damage directly caused irreparable harm and damages to the Amelios.

42. That as a direct result of property damage by the Defendant, the Plaintiffs sustained irreparable harm and damages, to include but not limited to, mental anguish, emotional pain and suffering.

**WHEREFORE:** The Plaintiffs individually, claim monetary damages against the Defendant in an amount that exceeds the jurisdiction of the District Court of New York, Southern District, to be determined at trial, plus costs, and for any further relief that this Honorable Court determines necessary and appropriate

**COUNT III - Impersonation, tampering with mail, unauthorized access to plaintiffs' internet account, harassment and negligence**

The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-38 above.

43. That the Defendants impersonation, tampering with mail, unauthorized access to plaintiffs' internet account, harassment and negligence caused irreparable harm and damages to the Amelios.

44. That as a direct result of impersonation, tampering with mail, unauthorized access to plaintiffs' internet account, harassment and negligence by the Defendant, the Plaintiffs

sustained irreparable harm and damages, to include but not limited to, mental anguish, emotional pain and suffering.

**WHEREFORE:** The Plaintiffs individually, claim monetary damages against the Defendant in an amount that exceeds the jurisdiction of the District Court of New York, Southern District, to be determined at trial, plus costs, and for any further relief that this Honorable Court determines necessary and appropriate

### CLAIMS RESERVED

The Plaintiff herein reserve all claims against non-parties to this complaint that are not designated as Defendants in this matter, allowing the Plaintiff an opportunity to discover all relevant facts and any and all claims against the non-parties.

### EQUITABLE TOLLING

The Plaintiffs herein invoke equitable tolling in order to preserve any and all claims recently discovered by Plaintiff, or if the conduct complained of herein is continuous.

### VERIFICATION

The above information is true and correct to the best of our knowledge.

Dated: February 3, 2022　　　　　　　　　/s/ Carmine P. Amelio  
　　　　　　　　　　　　　　　　　　　　Carmine P. Amelio, Plaintiff Pro Se  
　　　　　　　　　　　　　　　　　　　　32 Main Street  
　　　　　　　　　　　　　　　　　　　　New Milford, CT 06776  

　　　　　　　　　　　　　　　　　　　　/s/ Alfonso Amelio  
　　　　　　　　　　　　　　　　　　　　Alfonso Amelio, Plaintiff Pro Se  
　　　　　　　　　　　　　　　　　　　　32 Main St  
　　　　　　　　　　　　　　　　　　　　New Milford CT 06776