**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARMINE P. AMELIO and ALFONSO AMELIO,<br><br>Plaintiff,<br><br>v.<br><br>GALIA HOURI, EYAL RONEN, UNKNOWN FEMALE TRESPASSER "NEVO", NICHOLAS BLASONE, THE LEGAL AID SOCIETY, MAX REINHARDT, RICHARD SEMEGRAM, LEIROZE MIZRAHI and INSTALOCK LOCKSMITH 304 INC<br><br>Defendants. | 22 CIV. 975 (JPC)<br><br>*Civil Action*<br><br>**JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

**NOW COMES** Plaintiffs, CARMINE P. AMELIO (C. Amelio) and ALFONSO AMELIO (A. Amelio), individually (collectively "Amelios") hereby submits this Complaint against the above named Defendants, and in support thereof, states as follows:

## BASIS FOR JURISDICATION

1. Under 28 U.S.C. § 1332, federal courts may hear cases in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000. That the amount of this claim exceeds the jurisdictional limit of the District Court of New York, Southern District and is the appropriate venue for this claim because the breach of contract, breach of fiduciary duty, property damage, tampering with mail, impersonation, unauthorized access to plaintiffs' internet account, harassment, emotional distress, conspiracy/ RICO and negligence occurred in Bronx County, NY.

## FACTS

2. That Galia Houri (Galia)(guest) is a resident of New York.
3. That Eyal Ronen (Eyal) is a resident of New York.
4. Unknown Female Trespasser "Nevo" is a resident of New York.
5. Nicholas Blasone is a resident of New York.
6. Max Reinhardt is a resident of New York.
7. Richard Semegram is a resident of New York.
8. Leiroze Mizrahi is a resident of New York.
9. The Legal Aid Society is a New York domestic non-for-profit corporation located in New York
10. Instalock Locksmith 304 Inc is a Domestic business corporation located in New York
11. That Alfonso Amelio (A. Amelio) resides in New Milford, CT, which is his primary domicile and owns the subject proper in Bronx, NY, where he occasionally stays.
12. That Carmine Amelio (Carmine)(C. Amelio)(Landlord) resides in New Milford, CT, where his two (2) children live and go to school and with whom he has shared physical and legal custody on an alternating weekly basis and has ownership interest the owns the subject proper in Bronx, NY, where he occasionally stays.
13. That this action is being brought against the above named defendants for breach of contract, breach of fiduciary duty, property damage, tampering with mail, impersonation, unauthorized access to plaintiffs' internet account, harassment, emotional distress, conspiracy/ RICO and negligence occurred in Bronx County, NY.
14. On July 28, 2020 Galia Houri (Galia)(guest) booked a reservation for the 2nd and 3rd floors of plaintiff's home for 30 days from check in on July 31, 2020 through check out on August 30, 2020, for the amount of $3,250.00 and extended every 30 days thereafter,

at all times under plaintiff's AirBnB terms and conditions, through August 28, 2021. Carmine Amelio, as Host/Landlord allowed Gaila's husband, Eyal Ronen (Eyal), with his authorization and permission to stay at my home with Galia.

15. On 6/9/21 Galia and Eyal intentionally and negligently clogged plaintiffs' sewer line with plastic gloves, non disposable wipes and paper towels. The plumber cost alone was $800.00 which Galia and Eyal refused to pay, including clean up of sewage that overflowed and spilled into the entire first level, which cost an additional $1,500.00 for clean up and sanitizing.

16. On August 28, 2021 Galia and Eyal failed to check out, pursuant to extended short term agreement made on July 29, 2021 for check in on July 30, 2021 through check out on August 28, 2021.

17. On August 31, 2021, Eyal texted Carmine and advised that they were looking for a new place and only needed a two week booking extension. On September 1, 2021, C. Amelio texted Galia their requested extension agreement for check in August 28, 2021 through check out September 10, 2021 for a total payment in the amount of $1,516.17 but they failed to make payment and refused to vacate plaintiffs' home. Galia and Eyal continued to live at plaintiffs' home without making any payments, pursuant to continued 30 day extension agreements, and finally vacated the premises on February 22, 2022. Galia and Eyal failed to make payment for the following 30 day extensions periods and total payments owed to plaintiffs in the amount of $19,500.00:

    a) August 28, 2022 check in through September 27, 2022 check out - $3,250.00
    b) September 27, 2022 check in through October 27, 2022 check out- $3,250.00
    c) October 27, 2022 check in through November 26, 2022 check out - $3,250.00
    d) November 26, 2022 check in through December 26, 2022 check out - $3,250.00
    e) December 26, 2022 check in through January 25, 2022 check out - $3,250.00
    f) January 25, 2022 check in through February 23, 2022 check out- $3,250.00

18. Galia and Eyal filed four lawsuits against plaintiff in Bronx Landlord-Tenant court falsely claiming “Illegal lockout” and tenant status and thus are responsible for holdover damages in the amount of $39,000.00.

19. On or about September 2, 2021, C. Amelio called Optimum Cable to change the passcode to his internet account for security and terminated the guest internet access due to their failure to pay the extend short term agreement.

20. On September 3, 2021, C. Amelio received a text from Eyal demanding restoration of the internet service.

21. On September 10, 2021, C. Amelio observed and spoke to an unknown person who came to the door at his home who claimed to be an Optimum Cable Company employee. He stated that he was instructed to move plaintiffs’ service from their private secured first floor to the second floor where my Galia and Eyal were staying. C. Amelio had not made any requests to move his service and he advised him that he did not provide Optimum permission for moving his internet to the second floor and that he was not authorized to do work and C. Amelio instructed him to leave the premises.

22. On September 10, 2021, C. Amelio called optimum and was informed that they had received a call from the account holder with a request to move his modem from his private secured 1st floor to the 2nd floor where my guests were staying. Neither C. Amelio nor his brother A. Amelio had called Optimum on 9/7/21 at 3:27 pm and C. Amelio alleges that Eyal, Galia or someone on their behalf, instructed by them and called optimum impersonating C. Amelio or A. Amelio, which is a crime and unlawfully gained unauthorized access to plaintiffs’ Optimum Cable account, which is also a crime.

Optimum records all conversations and they keep records and recording of the caller, conversation and the caller phone identification.

23. On 9/14/21, C. Amelio observed the Galia and Eyal leaving his home with large travel suitcases.
24. On 9/15/21, C. Amelio observed suspicious activity at his home and alleged trespasser who had removed his “no trespassing signs” and blocked the cameras at his private rear entrance, that view the outdoor rear of his home, with chairs and boxes. C. Amelio also noticed water in his private lower level which appeared to be coming from the 2nd floor where the guests had been staying after departing on 9/14/21.
25. On 9/16/21 C. Amelio went to the 45th Police Precinct to file a complaint against his guests for alleged impersonation and unauthorized access to his Optimum internet account and the breach of my rear security cameras by an unknown person at my home. The police refused to take his complaint but instead made a harassment report under Police Complaint# 2021455052. C. Amelio also advised the police that he would be securing his home and posting new “No Trespassing” signs.
26. On 9/16/21 C. Amelio texted both Galia and Eyal and advised them that he filed a police complaint for their misconduct and criminal activity at his home and that they were no longer permitted at his home located at 3228 Schley Avenue, Bronx, New York, 10465 and that he would press charges for trespassing. C. Amelio advised them to provide an address for their belongings that were removed from his home. C. Amelio also advised them not to tamper with his mail and mailbox, which was never permitted or authorized. C. Amelio did not get any response to his text messages from either Galia or Eyal. In addition to intentional negligence in clogging my sewer line and water leak, C. Amelio discovered the following damages:

- Unauthorized alteration to my walls - $2,350.00
- Damage to my cabinets - $542.00
- Damages to my kitchen and flooring - $3,875.00
- Cosmetic machine and manufacturing
- Security violations and internet -
- Three damaged mattresses and removed of protective liners - $2,100.00
- Damage wifi/passcode door locks - $928.00
- Damaged screen door - $313.00
- Damages to my dining room indoor chairs, which were left outside to rust and cause water damage to the cushions - $78.00
- Unpaid rent plus holdover - $38,000.00
- Clogged sewer line; plumbing cost and clean up - $2,300.00

27. On 9/16/21 at approximately 11:26 pm, C. Amelio observed unknown female trespasser "Nevo" trespassing and attempting to enter his private lower entry door. C. Amelio had not previously seen unknown female trespasser "Nevo" at his home or captured the unknown female trespasser on any of my outdoor surveillance cameras and Eyal and Galia were the only guests authorized and permitted to be at his home, pursuant to plaintiffs' AirBnB terms and conditions.

28. On 9/17/21, C. Amelio observed an alleged locksmith Leiroze Mizrahi owner operator with business name Instalock locksmith arrive at my home and he, along with unknown female trespasser "Nevo", who broke into and entered his home by drilling and destroying my locks without any authority or permission and Mr. Mizrahi aiding and abetting by acting upon the direction of unknown female trespasser "Nevo".

29. On 9/17/21 C. Amelio called 911 and the police arrived at my premises while Mr. Mizrahi and unknown female trespasser "Nevo" were still at his home.

30. On 9/17/21, C. Amelio observed my neighbor Nicholas Blasone who, based on my conversation with Officer Hasan, provided false testimony regarding unknown female trespasser "Nevo".

31. On 9/17/21 Officer Hasan called C. Amelio and based on misrepresentations and false statements by Nicholas Blasone and unknown female trespasser “Nevo”, allowed unknown female trespasser “Nevo” to stay in my home after breaking and entering, without any evidence or documentation and despite his testimony while he appeared to weigh heavily on Nicholas Blasone’s false testimony regarding unknown female trespasser “Nevo”.
32. On 9/30/21 C. Amelio emailed an Audio preservation letter to Optimum Cable pursuant to Police Complaint# 2021455052, Optimum Escalation Control# 9464405.
33. On 10/1/21 C. Amelio observed unknown female trespasser “Nevo” who had illegally parked her Ford Prius, New York Plate Number KHA-9319 in his driveway, despite his posted signs: “No Parking – Unauthorized vehicles will be Towed Away at vehicle owner’s expense” and the rear of her vehicle was also parked on the sidewalk. C. Amelio subsequently called 911 and the Police ticketed her vehicle and I also called a towing service and they towed her vehicle away from his driveway.
34. On 10/7/21, C. Amelio called the 45th Precinct to complain that unknown female trespasser “Nevo” was trespassing and illegally occupying his home and that he had not heard from or seen Galia or Eyal since 9/14/21. C. Amelio was transferred to Detective Anthony Corrado who he spoke to for nearly 45 minutes and stated that C. Amelio was within his rights and he instructed C. Amelio to secure his home. C. Amelio explained to Detective Corrado that he was concerned for my safety for entering his home while unknown female trespasser “Nevo” was present and Detective Corrado stated that he would arrange for the assistance of Sergeant Major to escort him and help him with securing his home and reposting “No Trespassing” signs.

35. Pursuant to Detective Corrado's instructions, C. Amelio met Sergeant Major on 10/8/21 who arranged for Police escorts Officer Perez and Office Sugrim to assist him in securing his home.

36. On 10/8/21, at approximately 11:20 AM, C. Amelio met Officer Perez and Office Sugrim to secure his home and post "No Trespassing" signs. The unknown female trespasser "Nevo" was not present at his home during that time.

37. On 10/8/21, at approximately 8:38 PM, C. Amelio observed unknown female trespasser "Nevo" attempting to enter my home and he called 911 when it appeared that she was not leaving the premises. C. Amelio also observed unknown female trespasser "Nevo" entering his neighbor's Nicholas Blasone's home several times. The Police from the 45th Precinct arrived at the premises at approximately 1:00 AM on October 9, 2021. C. Amelio observed unknown female trespasser "Nevo" and Nicholas Blasone talking to the Officers. Officer Hasan called C. Amelio several times and he subsequently informed unknown female trespasser "Nevo" that she was not permitted or allowed to enter my home and he asked C. Amelio if he could meet unknown female trespasser "Nevo" so she could retrieve her belongings. C. Amelio agreed to meet unknown female trespasser "Nevo" the same day after 10:00 AM so she could retrieve her belongings.

38. On 10/9/21 at approximately 11:22 AM, C. Amelio met unknown female trespasser "Nevo" so she could retrieve her belongings but she refused to do so and instead proceeded to verbally harass him. C. Amelio advised and stated that if she refused to retrieve her belongings that he would be leaving the premises; which he did.

39. On 10/9/21, C. Amelio sent Detective Corrado an email providing video evidence and related documentation of the above.

40. On 10/11/21 at approximately 11:22 AM, C. Amelio observed Galia and Eyal at his premises for the first time since 9/14/21 and whom I had not seen or heard from since 9/14/21.

41. On 10/12/21 C. Amelio received a call from Detective Corrado with conflicting statements regarding his testimony and he instructed me to let Galia and Eyal back into his home. C. Amelio believes that Galia and Eyal made false statements to Detective Corrado and it appears that he acted upon the same. In addition, Detective Corrado refused to explain the disappearance of Galia and Eyal for nearly thirty (30) days without any correspondence and any explanation regarding unknown female trespasser "Nevo". Galia and Eyal had requested a two week booking extension from check in 8/28/21 to check out on 9/11/21, which was not paid, and subsequently moved out on 9/14/21. On 9/17/21 C. Amelio observed locksmith Leiroze Mizrahi aiding and abetting trespasser unknown female trespasser "Nevo" breaking and entering his home without my authority or permission. Galia and Eyal relinquished possession on 9/14/21 and unknown female trespasser "Nevo" was not a tenant authorized or permitted to reside in his home. Based on Galia and Eyal's alleged false statements to Police and Detective Corrado, C. Amelio was forced and coerced under duress by the police to provide keys and allow Galia and Eyal access and entry into his home, along with unknown female trespasser "Nevo", who was not authorized or permitted in his home and C. Amelio was forced to remove his new guest in possession that was occupying and staying at my home.

42. On 10/14/21 plaintiff Carmine Amelio was unlawfully arrested by Officer Bernadette Corey for illegal eviction.

43. On March 18, 2020, C. Amelio, filed a complaint with the United States Postal Service for mail tampering and unauthorized access plaintiffs' secure mailbox through the mail carrier, caused by Galia and Eyal, Case Confirmation For Service Request# 36677825.

44. On March 18, 2020, C. Amelio, filed a complaint with the United States Postal Inspector against Galia and Eyal for mail fraud, mail tampering and unauthorized access plaintiffs' secure mailbox.

45. Subsequently Galia filed four petitions in Landlord-Tenant court with false statements and allegation, including false reporting of income in order to obtain free legal service from The Legal Aid Society, represented by attorney Max Reinhardt and Richard Semegram, which were filed in retaliation and meant to harass plaintiffs.

46. That as a direct and proximate result of the Defendants breach of contract, breach of fiduciary duty, property damage, tampering with mail, impersonation, unauthorized access to plaintiffs' internet account, harassment, emotional distress, conspiracy/ RICO and negligence the Amelios suffered irreparable harm.

47. That all of the injuries, damages, and irreparable harm sustained by the Amelios resulted from breach of contract, breach of fiduciary duty, property damage, tampering with mail, impersonation, unauthorized access to plaintiffs' internet account, harassment, emotional distress, conspiracy/ RICO and negligence.

48. That as a direct and proximate result of breach of contract, breach of fiduciary duty, property damage, tampering with mail, impersonation, unauthorized access to plaintiffs' internet account, harassment, emotional distress, conspiracy/ RICO and negligence the Amelios suffered irreparable harm, emotional distress, conscious pain and suffering, and other damages.

**<u>COUNT I: Breach of Contract/ Breach of Fiduciary Duty</u>**
**(against Galia Houri and Eyal Ronen)**

The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-48 above.

49. That the Defendants breach of contract and breach of fiduciary duty directly caused irreparable harm and damages to the Amelios.

50. That as a direct result of breach of contract and breach of fiduciary duty by the Defendant, the Plaintiffs sustained irreparable harm and damages, to include but not limited to, mental anguish, emotional pain and suffering.

**<u>COUNT II Property Damage</u>**
**(against Galia Houri and Eyal Ronen)**

The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-50 above.

51. That the Defendants property damage directly caused irreparable harm and damages to the Amelios.

52. That as a direct result of property damage by the Defendant, the Plaintiffs sustained irreparable harm and damages, to include but not limited to, mental anguish, emotional pain and suffering.

**<u>COUNT III – Impersonation, unauthorized access to plaintiffs' internet account</u>**
**(against Galia Houri and Eyal Ronen)**

The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-52 above.

53. That the Defendants property damage directly caused irreparable harm and damages to the Amelios.
54. That as a direct result of property damage by the Defendant, the Plaintiffs sustained irreparable harm and damages, to include but not limited to, mental anguish, emotional pain and suffering.

**<u>COUNT IV - tampering with mail</u>**
**(against Galia Houri and Eyal Ronen)**

## U.S. Code § 1708 - Theft or receipt of stolen mail matter gen-erally

Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or
Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or
Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—Shall be fined under this title or imprisoned not more than five years, or both.

The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-54 above.

55. That the Defendants property damage directly caused irreparable harm and damages to the Amelios.

56. That as a direct result of property damage by the Defendant, the Plaintiffs sustained irreparable harm and damages, to include but not limited to, mental anguish, emotional pain and suffering.

**COUNT V – harassment**
**(All defendants)**

The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-56 above.

57. That the Defendants property damage directly caused irreparable harm and damages to the Amelios.

58. That as a direct result of property damage by the Defendant, the Plaintiffs sustained irreparable harm and damages, to include but not limited to, mental anguish, emotional pain and suffering.

**COUNT VI – Negligence**
**(All defendants)**

The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-58 above.

59. That the Defendants property damage directly caused irreparable harm and damages to the Amelios.

60. That as a direct result of property damage by the Defendant, the Plaintiffs sustained irreparable harm and damages, to include but not limited to, mental anguish, emotional pain and suffering.

**COUNT VII – Emotion Distress**
**(All defendant's)**

To recover for the intentional infliction of emotional distress, a plaintiff usually has the burden to prove that 1) the defendant has acted intentionally or recklessly; 2) defendant's act was outrageous and extreme and 3) such act has caused the plaintiff's emotional distress.

- I**ntentional Infliction:** In cases when the defendant's deliberate actions aimed to cause mental suffering to the victim, the victim can file an intentional infliction claim. An example includes constant bullying and verbal attacks within the workplace. Emotional trauma caused by reckless behavior is also classified as intentional infliction.
- **Negligent Infliction:** On the other hand, if the defendant unintentionally caused mental suffering through an accident, the American legal system categorizes this as negligent infliction of emotional distress. For example, if a drunk driver killed a child, the family left behind would suffer from emotional distress and could file a civil lawsuit.

The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-60 above.

61. That the Defendants property damage directly caused irreparable harm and damages to the Amelios.

62. That as a direct result of property damage by the Defendant, the Plaintiffs sustained irreparable harm and damages, to include but not limited to, mental anguish, emotional pain and suffering.

**COUNT VIII – Conspiracy/ RICO**
**(All defendant's)**

The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-62 above.

63. That the Defendants property damage directly caused irreparable harm and damages to the Amelios.

64. That as a direct result of property damage by the Defendant, the Plaintiffs sustained irreparable harm and damages, to include but not limited to, mental anguish, emotional pain and suffering.

**WHEREFORE:** The Plaintiffs individually, claim monetary damages against the Defendants in an amount that exceeds the jurisdiction of the District Court of New York, Southern District, to be determined at trial, plus costs, and for any further relief that this Honorable Court determines necessary and appropriate

## CLAIMS RESERVED

The Plaintiff herein reserve all claims against non-parties to this complaint that are not designated as Defendants in this matter, allowing the Plaintiff an opportunity to discover all relevant facts and any and all claims against the non-parties.

## EQUITABLE TOLLING

The Plaintiffs herein invoke equitable tolling in order to preserve any and all claims recently discovered by Plaintiff, or if the conduct complained of herein is continuous.

## VERIFICATION

The above information is true and correct to the best of our knowledge.

Dated: March 9, 2022

*/s/ Carmine P. Amelio*
Carmine P. Amelio, Plaintiff Pro Se
32 Main Street
New Milford, CT 06776

*/s/ Alfonso Amelio*
Alfonso Amelio, Plaintiff Pro Se