UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

CARMINE P. AMELIO, ALFONSO AMELIO,      :
and PAUL AMELIO,      :
       :      22-CV-975 (DEH) (RWL)
                              Plaintiffs,      :

- against -      :      **REPORT AND RECOMMENDATION**
       :      **TO HON. DALE E. HO:**
       :      **MOTION TO DISMISS (DKT. 160)**
GALIA HOURI, EYAL RONEN,      :
UNKNOWN FEMALE TRESPASSER "NEVO," :
NICHOLAS BLASONE, MAY HESS,      :
PATRICIA BLASONE, THE LEGAL AID      :
SOCIETY, MAX REINHARDT, RICHARD      :
SEMEGRAM, NAVEED M. SIDDIQI,      :
SIDDIQI LAW GROUP, LEIROZE MIZRAHI,      :
INSTALOCK LOCKSMITH 304 INC,      :
JONATHAN CORRADO, NADAVE HOURI,      :
BERNADETTE CORRY, and JOEL POLANCO,:
       :
                            Defendants.  :

-----------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiffs filed this action alleging claims under state law arising from the rental of

and damage to Plaintiffs' residential property in the Bronx, New York.  Their first complaint

was dismissed for lack of subject matter jurisdiction.  Plaintiffs have since amended their

complaint three times and added claims under federal law.  Plaintiffs failed to serve most

Defendants, and only two groups of Defendants have appeared.  One group – the Legal

Aid Society and two of its attorneys (the "Legal Aid Defendants") – has already been

dismissed.  The second group – Detective Jonathan Corrado and Police Officer

Bernadette Corry (together, the "NYPD Defendants") – now move under Federal Rule of

Civil Procedure 12(b)(6) ("Rule 12(b)(6)") to dismiss for failure to state a plausible claim

for relief against them.  For the reasons set forth below, the NYPD Defendants' motion to dismiss should be granted.

## Factual Background

As required on a motion to dismiss, the facts are based primarily on the well-pled allegations of the currently operative pleading, which is the Third Amended Complaint ("TAC") (Dkt. 25).  The Court draws all reasonable inferences in favor of Plaintiffs as the non-moving party and references only those facts relevant to the claims against the NYPD Defendants.

## A.    The Premises, Tenants, And Plaintiffs' First Police Complaint

Plaintiffs Carmine, Alfonso, and Paul Amelio are brothers with an ownership interest in 3228 Schley Avenue in the Bronx, New York (the "Premises").  (TAC ¶¶ 2-4.) Acting as the landlord of the Premises, Carmine rented it to guests through Air BnB.  (*Id.* ¶¶ 3, 23.)  On July 28, 2020, Defendant Galia Houri booked a reservation at the Premises for herself and her husband Eyal Ronen beginning on July 31, 2020, and consecutively rebooked the Premises every 30 days through August 28, 2021.  (*Id.* ¶¶ 23-24.)  Houri and Ronen resided on the second and third floors; the first floor was private.  (*Id.* ¶¶ 23, 35, 41.)

On August 28, 2021, Houri and Ronen did not check out pursuant to the agreement made on July 29, 2021.  (*Id.* ¶ 27.)  A few days later, on August 31, 2021, Ronen informed Carmine that he and Houri needed a two-week extension.  (*Id.* ¶ 28.)  Carmine texted Ronen their extension agreement on September 1, 2021.  (*Id.* ¶ 29.)  On September 10, 2021, however, Houri and Ronen failed to make a payment for the two-week extension period and refused to vacate the Premises.  (*Id.*)  Also on September 10, 2021, Carmine

learned that someone, without authorization, had called Optimum Cable Company requesting to move Carmine's internet modem from the private first floor of the Premises to the second floor.  (*Id.* ¶¶ 35-38.)

On September 14, 2021, Carmine observed Houri and Ronen leaving the Premises with large travel suitcases.  (*Id*. ¶ 39.)  The next day, September 15, 2021, Carmine observed that "an alleged trespasser" had removed no-trespassing signs from the Premises and blocked cameras located at the rear entrance.  (*Id.* ¶ 40.)  Carmine also noticed water in the private lower level of the Premises that appeared to come from the rented second floor.  (*Id.* ¶ 41.)

On September 16, 2021, Carmine went to the 45th Precinct to file a complaint against his "guests" for "alleged impersonation and unauthorized access to his Optimum internet account" and that an unknown person had "breach[ed]" the Premises' rear security cameras.  (*Id*. ¶ 42.)  After the police made a harassment report, Carmine informed the police that he would be securing the Premises and posting new no-trespassing signs.  (*Id.* ¶ 43.)  Carmine removed Houri and Ronen's belongings from the Premises and informed Houri and Ronen by text that he had filed a police complaint against them and that they were no longer permitted at the Premises.  (*Id.* ¶¶ 44-45.)  Carmine also installed new locks on the Premises.  (*See* Opp. at ECF 4.[1])

**B.    Trespasser Incidents And Additional Complaints To The Police**

Shortly before midnight on September 16, 2021, Carmine observed an "unknown" female trespasser, whom he refers to as Defendant "Nevo," attempting to enter the

---

[1] "Opp." refers to Plaintiffs' Opposition to Defendants Corrado and Corry's Motion to Dismiss, dated November 10, 2025, at Dkt. 170.

Premises.  (TAC ¶ 49.)  The next day, September 17, 2021, a locksmith (Defendant Mizrahi), at the direction of Nevo, "drilled Plaintiffs' locks" and obtained entry into the Premises.  (*Id.* ¶ 51.)  Carmine called the police who arrived while the locksmith and Nevo were still at the Premises.  (*Id*. ¶ 52.)  NYPD Officer Hasan (not named as a party) – "based on misrepresentations and false statements" provided by Nevo and Carmine's neighbor (Defendant Nicholas Blasone) and "without any evidence or documentation" – allowed Nevo to stay in the Premises.  (*Id*. ¶¶ 53-54.)

On October 1, 2021, Carmine observed that Nevo had parked her car in the Premises' driveway, despite his having posted no-parking signs warning that unauthorized vehicles would be towed away.  (*Id*. ¶ 56.)  Carmine called 911, after which the police ticketed Nevo's vehicle. (*Id*.)  Carmine then called a towing service to take the car away.  (*Id*. ¶ 57.)   Almost a week later, on October 7, 2021, Carmine called the 45th Precinct to complain that Nevo was trespassing and illegally occupying the Premises, and that Carmine had not seen or heard from Houri and Ronen since September 14, 2021. (*Id.* ¶ 58.)  Carmine spoke with Defendant Corrado, who stated that Carmine "was within his rights" and "instructed" Carmine to secure the Premises. (*Id.* ¶ 59.)  Detective Corrado also arranged for police to assist Carmine, which they did the following day.  (*Id.* ¶¶ 60-62.)

The evening of October 8, 2021, Carmine again observed Nevo attempting to enter the Property.  (*Id*. ¶ 63.)  He also observed her repeatedly entering the home of Defendant Blasone.  (*Id*.)   Police arrived around 1:00 AM on October 9, 2021, and Officer Hasan informed Nevo that she was not permitted to enter the Premises, and that she would need to meet with Carmine to retrieve her belongings.  (*Id*. ¶¶ 65-66.)  Later that day, Carmine

met Nevo at the Property for her to retrieve her belongings, but "she refused to do so" and instead verbally harassed Carmine. (*Id*. ¶¶ 67-68.) Carmine emailed Detective Corrado video and documentation of the confrontation. (*Id*. ¶ 70.)

## C.  Additional Complaints And Carmine's Arrest

On October 11, 2021, Carmine observed Houri and Ronen at the Premises, after not having seen or heard from them since mid-September. (*Id*. ¶ 71.) On October 12, 2021, Carmine received a call from Detective Corrado instructing Carmine to let Houri and Ronen back into the Premises. (*Id*. ¶ 72.) Detective Corrado "refused to explain the disappearance" of Houri and Ronen for almost 30 days without any communication or explanation regarding Nevo. (*Id*. ¶ 74.) Carmine believes Detective Corrado received and acted on false statements made by Houri and Ronen. (*Id*. ¶ 73.) "Based on" Houri and Ronen's false statements to the police, Carmine was "forced and coerced under duress by the police" to provide keys and allow Houri, Ronen, and Nevo access to the Premises, and to remove his new Air BnB guest who had been staying at the property. (*Id*. ¶ 77.)

A police complaint report completed by Defendant Officer Corry shows that on October 13, 2021 (the "Police Complaint Report"), Houri filed a complaint with the police reporting that "[s]he and her husband went on vacation for 3 weeks and when they returned … their locks were changed and landlord had rented apartment to another tenant"; that Houri resided at the Premises for one year; and that the landlord put all of

their belongings in a storage unit.  (Reszytniak Decl. ¶ 4 and Ex. B.)[2]  On October 14, 2021, Officer Corry arrested Carmine for illegal eviction.  (*Id*. ¶ 78.)

On November 10, 2021, Carmine again filed police complaints against Houri and Ronen, as well as Detective Corrado and Officer Corry.  (*Id*. ¶ 79.)  Defendant Sergeant Joel Polanco investigated and dismissed the complaints, which Plaintiffs allege Polanco "used as a cover up for complaints against Detective Corrado and Officer Corry."[3]  (*Id*.)

## D.    Landlord-Tenant Actions

Sometime thereafter, Houri and Ronen, with the assistance of Legal Aid attorneys, filed multiple petitions in Bronx Landlord-Tenant court "with false statements and allegations" claiming they were subject to an illegal lockout.  (*Id*. ¶¶ 32, 82; *see also* Reszytniak Decl. Ex. A at ECF 5-11 (November 17, 2021 petition).)  On January 8, 2022, Carmine retained attorney Defendant Naveed M. Siddiqi and his firm to represent him in at least one of the Landlord-Tenant actions, and to commence a case against Houri and Ronen in New York State Supreme Court.  (TAC ¶ 83.)  Displeased with the firm's representations, Carmine fired Siddiqi and proceeded pro se in the Landlord-Tenant action.  (*Id.*)  Carmine, "under duress," then settled the Landlord-Tenant action with Houri and Ronen.  (*Id.*)  The settlement included Carmine's return of items belonging to Houri,

---

[2] "Reszytniak Decl." refers to the Declaration of Zoe Reszytniak, dated August 5, 2025, at Dkt. 156.  Plaintiffs fault the Reszytniak Declaration for omitting critical facts and thus providing a "[s]elective [n]arrative."  (Opp. at ECF 7.)  The Declaration attaches two public records.  The material that Plaintiffs contend was omitted is the subject of allegations in the TAC that the Court accepts as true, and, in any event, is addressed by the NYPD Defendants in their briefing.  The Court thus has not been presented with nor has adopted a selective narrative.

[3] Sergeant Polanco has not been served and thus is not an appearing or moving Defendant.  (*See* Dkt. 141 (Report and Recommendation for dismissal of unserved defendants, including Sergeant Polanco).)

Ronen, and others.  (*Id*.)  Houri and Ronen vacated the premises on February 22, 2022. (*Id*.)

**Procedural History**

**A.     The Currently Operative Third Amended Complaint**

Plaintiffs commenced the action on February 3, 2022.  (Dkt. 1.)  The operative complaint is the TAC filed on June 16, 2023.  (Dkt. 25.)  It asserts sixteen claims, only some of which implicate the NYPD Defendants insofar as the respective claim either identifies them as Defendants against whom the claim is asserted, or does not identify any subset of Defendants, in which case the Court considers the claim as asserted against all Defendants.  Those claims are: Harassment under New York common law (Claim V); Negligence (Claim VI); Intentional infliction of emotional distress (Claim VII); Negligent infliction of emotional distress (VIII); Tortious interference with Plaintiffs' property (Claim IX); (X) Conspiracy under New York common law (Claim X); Unlawful seizure in violation of the Fourth Amendment (Claim XI); Retaliation in violation of the First Amendment (Claim XII); False statements by a public official in violation of the Fourteenth Amendment (Claim XIII); Denial of procedural due process and equal protection in violation of the Fourteenth Amendment (Claim XIV); and "Cover up" (Claim XV).

**B.     The Never-Filed Fourth Amended Complaint**

On September 23, 2023, in response to the Legal Aid Defendants' motion to dismiss, Plaintiffs moved to file a Fourth Amended Complaint ("FAC").  (Dkt. 49.)  As relevant to the NYPD Defendants, the proposed FAC sought to (1) change Count V from harassment to abuse of process; (2) expand Count XI to include not only unlawful seizure

7

in violation of the Fourth Amendment but also deprivation of the right to personal privacy and dignity; and (3) add a count XVII for malicious abuse of process pursuant to 42 U.S.C. § 1983.  (*See generally* Dkt. 81.)  On April 4, 2024, the Court issued a Report and Recommendation (the "R&R") to grant in part Plaintiffs' motion, permitting amendment subject to excluding claims that were futile on their face.  (Dkt. 97.)

With respect to the NYPD Defendants, the claims found to be futile included retaliation in violation of the First Amendment (because neither the TAC or FAC alleged that the NYPD Defendants retaliated against anything, let alone retaliated because Plaintiffs' exercised their First Amendment rights), malicious abuse of process (because neither the TAC nor FAC alleged that the NYPD Defendants had a collateral purpose in carrying out their alleged actions), and all state law claims (because neither the TAC nor FAC alleged that Plaintiffs filed a notice of claim as required under New York municipal law).  (*Id*. at 25-29.)  On September 13, 2024, the District Judge adopted the R&R in full, giving Plaintiffs three weeks to file the FAC.  (Dkt. 115.)  Despite being given leave to file the FAC, however, Plaintiffs never did so, even after receiving repeated extensions. When Plaintiffs asked for yet another extension on May 13, 2025 (Dkt. 128), the Court denied the request, leaving the TAC as the operative complaint.  (Dkt. 133.)

## D.    The NYPD Defendants' Motion To Dismiss

On August 7, 2025, the NYPD Defendants filed the instant motion to dismiss along with the Reszytniak Declaration and a memorandum of law. (Dkt. 155 ("Mem").)  The NYPD Defendants argue that none of the allegations assert a plausible claim for relief against them.  After receiving multiple extensions, Plaintiffs filed their opposition brief on November 10, 2025.  ("Opp.")  The NYPD Defendants filed a reply memorandum of law

8

on November 24, 2025.  (Dkt. 171 ("Reply").)  The motion has been referred to me.  (Dkt. 16.)

Apart from the merits, the parties' briefing raises two issues that deserve discussion at the outset.  First, the NYPD Defendants argue that Carmine's brothers – Alfonso and Paul – have defaulted on the motion by failing to submit any opposition in their own names.  (Reply at 1-2.)  The NYPD Defendants assert that the opposition brief was "purportedly submitted solely by Plaintiff Carmine Amelio on behalf of himself and his co-plaintiff brothers" and that as a pro se plaintiff, Carmine cannot represent his brothers.  (*Id*.)  Indeed, the "cover letter" section of Plaintiffs' opposition states that the opposition is submitted by "Carmine Amelio on behalf of himself and co-Plaintiffs Alfonso and Paul Amelio."  (Opp. at ECF 1.)  The NYPD Defendants' argument overlooks, however, that the opposition brief is submitted with "S/" signatures for each of the three Plaintiffs.  (Opp. at ECF 9.)  Each Plaintiff did not have to submit a separate, independent brief.  In any event, the Court does not find the form of the opposition's briefing and its submission by Carmine to be a basis to dismiss claims as against Alfonso and Paul.

Second, the parties dispute the extent to which the Court may consider the two exhibits attached to the Reszytniak Declaration.  Plaintiffs suggest that the Court may not consider them at all unless the instant motion were converted to one for summary judgment (Opp. at ECF 7), whereas the NYPD Defendants argue that the Court may consider them, although not for the truth of the matters asserted in them.  (Mem. at 6; Reply at 3-4.)  The NYPD Defendants are correct.

The two exhibits are (1) the Landlord-Tenant petition (the "L-T Petition") filed on November 17, 2021, by Houri against Carmine and Alfonso seeking restoration of

possession of the Premises, return of Houri's property, and prohibiting the brothers from further removing anything else of Houri's from the Premises (Reszytniak Decl. Ex. A), and (2) the October 13, 2021 NYPD Complaint Report completed by Officer Corry, based on information provided by Houri (*id.* at Ex. B.).  Both documents are public records and are alluded to in the TAC.  (*See* TAC ¶¶ 77-78 (alleging that the police acted on complaints made by Houri and Ronen); 82 (alleging that Houri filed multiple petitions in Landlord-Tenant court containing allegedly false statements).)  As such, the Court may consider them on a limited basis in connection with the motion to dismiss.  *See Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013).  The Court may take notice of the fact that those records exist and say what they say, but may not accept the statements made in the documents for the truth of those statements.  *See Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (courts may take judicial notice of court filings to establish that certain matters have been publicly asserted, but not for the truth of the matters asserted therein); *Crown Heights Shomrim Volunteer Safety Patrol, Inc. v. City of New York*, No. 11-CV-329, 2014 WL 4804869, at *2 (E.D.N.Y. Sept. 25, 2014) (dismissing plaintiff's false arrest claims and taking judicial notice of, among other things, NYPD Sprint Reports).

Notwithstanding the NYPD Defendants' acknowledgment that the statements made in the L-T Petition and Police Complaint Report may not be accepted as true for purposes of the motion, they in effect are asking the Court to do so in connection with the L-T Petition.  According to the L-T Petition, Houri and Ronen did not abandon the Premises when they left on October 11, 2021, but instead were traveling on vacation and allowed a houseguest to stay at the Premises in their absence.  On or about September

15, 2021, Houri learned from the houseguest that Carmine had entered the Premises without permission, disabled Houri and Ronen's security cameras, and placed a lock on the door without providing a key. Houri and Ronen contacted the police, who came to the Premises and approved a change of the recently installed lock. (Reszytniak Decl. ¶ 3 and Ex. A ¶¶ 9, 11.) While the Court may accept that the L-T Petition alleged those events, the Court is not at liberty to accept those allegations as fact (at least not solely based on the L-T Petition as distinct from other sources).

The NYPD Defendants nevertheless assert that the Court may rely on the content of the L-T Petition as proof of what information Houri provided to the police that established probable cause for Carmine's arrest, as discussed below. (Reszytniak Decl. ¶ 3; Mem. at 6; Reply at 3.) But the NYPD Defendants have not pointed to anything in the TAC or other material the Court may consider to show that the information in the L-T Petition was in fact provided to the police prior to Carmine's arrest. The police certainly did not have access to the L-T Petition itself at the relevant time inasmuch as the arrest occurred on October 14, 2021, while the L-T Petition is dated more than a month later.

In contrast, the Police Complaint Report does reflect information with which the police were provided in connection with arresting Carmine. The Court thus may consider the contents of the Police Complaint Report as allegations of which the police were aware, but still may not accept the allegations as true.

### Legal Standards

Rule 12(b)(6) permits motions to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on

11

its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to state a cause of action, a district court "accept[s] all factual claims in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lotes Co., Ltd. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks omitted).  This tenet, however, is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Rather, the complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level ... i.e., enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks omitted).  A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint. *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, and public records. *See Kleinman*, 706 F.3d at 152 (quoting *ATSI*

12

*Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). And, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (citing *Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994)).

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Courts construe such complaints "to raise the strongest arguments that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Courts follow this policy because "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* at 475 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

That said, "even pro se plaintiffs cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Martinez v. Ravikumar*, 536 F. Supp.2d 369, 370 (S.D.N.Y. 2008) (quoting *Twombly*, 550 U.S. at 555). Moreover, pro se plaintiffs are not exempt from compliance with relevant rules of procedural and substantive law. *See Azzarmi v. Key Food Stores Co-Operative Inc.*, No. 20-CV-8635, 2021 WL 1734922, at *3 (S.D.N.Y. May 3, 2021) ("Pro se status 'does not exempt a party from compliance with relevant rules of

procedural and substantive law'") (quoting *Maisonet v. Metropolitan Hospital and Health Hospital Corp.*, 640 F. Supp.2d 345, 348 (S.D.N.Y. 2009)); *Harley v. Nesby*, No. 08-CV-5791, 2011 WL 6188718, at *11 (S.D.N.Y. Dec. 12, 2011) ("pro se parties are not excused from complying with procedural rules") (collecting cases).

## Discussion

None of Plaintiffs' allegations asserted against the NYPD Defendants state a plausible claim for relief.

### A.    False Arrest (Claim XI)[4]

Carmine alleges that he was unlawfully arrested by Officer Corry for wrongful eviction in violation of the Fourth Amendment.  (TAC ¶ 78; *id*. at 21.)  The TAC does not state a plausible claim, however (nor does the FAC), because the allegations establish that the police had probable cause to arrest Carmine.[5]

"The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'"  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).  "'Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy

---

[4] Claim XI is styled as "[u]nlawful seizure for trial, actionable pursuant to the 4th amendment," and alleges that the NYPD Defendants "unlawfully seized and improperly deprived Plaintiffs of their property without due process or legal justification."  (TAC at 21, ¶ 135.)  The Court addresses Plaintiffs' claim for deprivation of property without due process below in the context of Claims VIII and XIV, which allege due process violations. To the extent Claim XI asserts unlawful seizure of property in violation of the Fourth Amendment, the probable-cause analysis discussed in regard to the seizure and arrest of Carmine applies no less.

[5] It also bears noting that neither the TAC nor FAC includes any elaboration concerning the alleged arrest beyond the general allegation that Carmine "was unlawfully arrested" by Officer Corry.  (TAC ¶ 78.)  There are no allegations about whether Carmine was handcuffed or otherwise seized or detained at the Premises, taken to the precinct, held at the precinct, or charged.

information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 118-19 (2d Cir. 1995).  It is well-established that police have probable cause to arrest if they receive "information from some person, normally the putative victim or eyewitness, … unless the circumstances raise doubt as to the person's veracity." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citations omitted).  "Indeed, as sources of information go, crime victims are among the most reliable; they usually can provide a first-hand, nonhearsay account of the criminal activity." *Campbell v. Giuliani*, No. 99-CV-2603, 2001 WL 91615, at *3 (E.D.N.Y. Jan. 24, 2001) (citing *Miloslavsky v. AES Engineering Society*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992)).

"Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest."  *Escalera*, 361 F.3d at 743. "Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Id*. (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).  "Qualified immunity from suit for false arrest is in part, therefore, a matter of second-order reasonableness: an officer is immune if it was **reasonable** for him to believe, **reasonably**, that the plaintiff was breaking the law." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999) (emphases in original).

15

Here, Detective Corry arrested Carmine for illegal eviction based on Houri and Ronen's complaint to the police that they had resided at the Premises for one year, and that while they were on vacation for three weeks, the landlord changed the locks, put Houri and Ronen's belongings in a storage unit, and rented the apartment to another tenant.  (*See* Reszytniak Decl. Ex. B (description of events in Police Complaint Report filed by Houri; TAC ¶¶ 73, 77-78 (alleging police acted on false statements by Houri and Ronen).  Houri and Ronen provided the NYPD Defendants with "knowledge" and "reasonably trustworthy information sufficient" to believe Carmine had committed an illegal eviction.  *Figueroa*, 825 F.3d at 99.  Under municipal and state law, a landlord may not induce a lawful occupant to vacate or discontinue their occupancy by, inter alia, seizing their property, changing the locks, or engaging in harassment or intimidation.  Real Property Actions and Proceedings Law ("RPAPL") § 768.1(a); N.Y.C. Admin. Code § 26-521.  These provisions protect both persons who have lawfully occupied the premises for 30 consecutive days or more, and persons who have entered into a lease for the premises.  *Id*.  A landlord's violation of the prohibitions is punishable as a misdemeanor offense.  RPAPL § 768.2.  Houri and Ronen informed the police that they were long-term tenants of the Premises and that their landlord, Carmine, did exactly what the unlawful-eviction statute prohibits: locked Houri and Ronen out of the Premises and removed their belongings.  *See* RPAPL § 768.1(a)(iii).  Plaintiffs concede as much in their Opposition.  (Opp. at 4 (stating as fact that during the October 7-12, 2021 period, Houri and Ronen informed the police they "were illegally locked out and that property had been removed").)

Indeed, the TAC's allegations, and facts asserted in Plaintiffs' Opposition, corroborate the information supplied by Houri and Ronen to the police. (*See, e.g.*, TAC ¶¶ 23-24 (Houri and Ronen resided at the Premises for more than a year); ¶ 43 (Carmine advised the police on September 16, 2021, that he would be securing the Premises); Opp. at ECF 4 (Carmine "installed new locks"); TAC ¶¶ 44-45 (Carmine informed Houri and Ronen that they were no longer permitted at the Premises, that Carmine would press charges for trespassing, and that Carmine had removed their belongings from the Premises); ¶ 72 (the police instructed Carmine to let the tenants "back" into the Premises); ¶ 77 (Carmine was required to provide keys to Houri and Ronen so that they could gain access and entry); ¶ 83 (pursuant to settlement, Carmine "return[ed] from storage" the items belonging to Houri and Ronen).)

Plaintiffs nevertheless assert three reasons why Carmine's arrest was, in their view, wrongful. Referring to Houri and Ronen as the "Tenants," Plaintiffs argue that (1) Carmine had made earlier complaints to the police, and "Detective Corrado had initially told Carmine to secure his property"; (2) "the Tenants' statements were materially inconsistent and were used by third parties (including Legal Aid attorneys) to coerce return of tenants' property"; and (3) the housing petition later filed by the Tenants … was improperly used and contained false statements." (Opp. at ECF 4, 6.) None of those arguments vitiate probable cause.

First, "the Second Circuit has held that probable cause may be found even if a police officer has been presented with different stories from an alleged victim and the arrestee." *Cruz v. City of New Rochelle*, No. 13-CV-7432, 2017 WL 1402122, at *15 (S.D.N.Y. Apr. 3, 2017) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001);

17

*Creighton v. City of New York*, No. 12-CV-7454, 2017 WL 636415, at \*27 (S.D.N.Y. Feb. 14, 2017) (collecting cases). Although Plaintiffs repeatedly characterize Houri and Ronen's statements to the police as "false," neither the TAC or FAC make any allegations suggesting there was any reason for the police to have doubted Houri and Ronen's veracity. "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997); *see also Panetta*, 460 F.3d at 396 ("once officers possess facts sufficient to establish probable cause … [t]heir function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence") (internal quotation marks omitted). "Moreover, deciding one witness is more credible than another is not equivalent to ignoring evidence." *Creighton*, 2017 WL 636415, at \*28 (internal quotation marks and alteration omitted). The NYPD Defendants were permitted to credit Houri and Ronen's version of events, regardless of whether their account was ultimately true or not.

Additionally, Plaintiffs' reliance on Carmine's prior statements to the police and Detective Corrado's instruction about securing the Premises overlooks the chronology as pled in the TAC, and conflates Carmine's complaints about Houri and Ronen with complaints about unknown trespassers. As set forth in the TAC, none of Carmine's earlier complaints suggested to the police that Houri and Ronen were unlawfully occupying the Premises. Rather, the only complaint concerning Houri and Ronen was Carmine's September 16, 2021 complaint about their alleged unauthorized access to Carmine's Optimum internet account. (TAC ¶ 42.) Carmine's other complaints concern incidents

18

by unknown trespassers.  (*See* TAC ¶ 42 (September 16, 2021 ("breach of my rear security cameras by an unknown person at the property"); ¶¶ 51-54 ("unknown female trespasser 'Nevo'"); ¶¶ 56-57 (Nevo's illegally parked vehicle).)  The TAC also highlights Carmine's conversation with Detective Corrado on October 7, 2021, in which Corrado told Carmine that he "was within his rights" and "instructed" Carmine to secure the property concerned "unknown female trespasser 'Nevo.'"  (TAC ¶¶ 58-60.)  Plaintiffs do not allege that Detective Corrado indicated that it was permissible for Carmine to change the locks on the Premises, while simultaneously being aware of the fact that Houri and Ronen had been residing there for a year and had gone on vacation.  Nor do they allege that Detective Corrado ever authorized or approved of Carmine removing Houri and Ronen's property from the Premises.

Second, Plaintiffs do not identify which statements by Houri and Ronen are "materially inconsistent," let alone how they are inconsistent.  To the extent Plaintiffs' point is that the information provided by Houri and Ronen was inconsistent with information previously provided by Carmine, the point is both wrong (at least based on the TAC's allegations) – because the pleadings do not allege that Carmine complained to the police that Houri and Ronen were not lawful tenants – and beside the point – because, as explained above, police may find probable cause despite conflicting accounts.  Finally, the L-T Petition post-dates Carmine's arrest by more than a month; if anyone "improperly used" the L-T Petition, it could not have been the NYPD Defendants when they arrested Carmine.

Thus, regardless of Carmine's earlier complaints to police and discussions with Detective Corrado, once learning of Houri and Ronen's version of events, "a competent

19

police officer could believe it was objectively reasonable to arrest plaintiff for the [crime] that had been committed." *Ricciuti*, 124 F.3d at 128. Because the TAC and Police Complaint Report establish that the police had probable cause to arrest Carmine – and, at the very least, arguable probable cause sufficient for qualified immunity to apply – Claim XI should be dismissed.

**B.    Due Process (Claims XIII, XIV)**

In Claim XIII, Plaintiffs allege "false statements by a public official in violation of due process" under the Fourteenth Amendment. In Claim XIV, they allege denial of procedural due process in violation of the Fourteenth Amendment. Expanding on the nature of their claims in their Opposition brief, Plaintiffs assert that they "had a clearly established property interest in the Premises" and that they were deprived of that interest "without proper procedural safeguards" when the police "facilitated tenant re-entry while ignoring [Plaintiffs'] prior complaints and mischaracterizing facts to the court." (Opp. at ECF 5.)

The Court construes Claim XIII as a substantive due process claim, and Claim XIV as a procedural due process claim. Substantive due process challenges deprivation of the Plaintiffs' property rights in the Premises; procedural due process challenges the procedure – or lack thereof – by which they were deprived of that property right. *See Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) ("while a procedural due process claim challenges the procedure by which a removal is effected, a substantive due process claim challenges the fact of the removal itself") (internal quotation marks, brackets, and citation omitted); *McCree v. City of New York*, No. 21-CV-2806, 2025 WL

895467, at *11 (E.D.N.Y. Mar. 24, 2025) (same).  The TAC, however, fails to plausibly assert either claim.[6]

"To succeed on a procedural due process claim, a plaintiff must first identify a property right, second show that the state has deprived him [or her] of *that* right, and third show that the deprivation was effected without due process."  *Progressive Credit Union v. City of New York*, 889 F.3d 40, 51 (2d Cir. 2018) (internal quotation marks omitted).  Plaintiffs had a property interest in the Premises at the relevant time insofar as they owned the Premises.  But by choosing to rent the Premises and enter into a landlord-tenant relationship with Houri and Ronen, Plaintiffs necessarily narrowed their interest by effectively giving up absolute control over the Premises and assuming the rights and responsibilities imposed by landlord-tenant law.  In entering that relationship, Plaintiffs had available a defined legal process for resolving landlord-tenant disputes, whether for non-payment, holdover, or otherwise; namely, an action for eviction or other relief in

---

[6] The NYPD Defendants additionally argue that the Court does not have jurisdiction over Plaintiffs' due process claims.  (Mem. at 13-14.)  They rely on cases invoking the *Rooker-Feldman* doctrine, which applies "to cases of the kind …  brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).  In granting the motion to dismiss filed by the Legal Aid Defendants, who represented Houri and Ronen in the Landlord-Tenant litigation, the Court found that it lacked jurisdiction over the claims against them for this very reason.  (Dkt. 97 at 19-22.)  The NYPD Defendants, however, stand in a more attenuated position to the Landlord-Tenant litigation than did the Legal Aid Defendants, and it is not at all clear that Plaintiffs seek a result that would have this Court reject or reconsider any judgment – or settlement (to which the doctrine also applies) – resulting from Plaintiffs' Landlord-Tenant litigation with Houri and Ronen.  *Cf. Trang v. Concris Realty Co.*, No. 05-CV-5441, 2005 WL 1398004, at *2-3 (E.D.N.Y. June 14, 2005) (cited by the NYPD Defendants and finding lack of jurisdiction where plaintiff tenant sought injunction to prevent enforcement of judgment of eviction granted in state court).  The Court therefore does not rest its opinion on lack of jurisdiction.  In any event, Plaintiffs' due process claims should be dismissed for the reasons set forth above.

21

Landlord-Tenant court.  *See Elmsford Apartment Associates, LLC v. Cuomo*, 469 F. Supp.3d 148, 173 (S.D.N.Y. 2020) (explaining that the ability to bring a summary proceeding under New York law to evict a tenant satisfied due process requirements – even in the context of the temporary Covid-19 eviction moratorium).  Whether or not Plaintiffs initiated the process, Houri and Ronen initiated proceedings in Landlord-Tenant court, providing Plaintiffs with an opportunity to be heard.  (*See* TAC ¶¶ 32, 82-83 (describing Landlord-Tenant proceedings initiated by Houri and Ronen and Plaintiffs' retention of an attorney who appeared for the case), and Reszytniak Decl. Ex. A  (the L-T Petition).)

Plaintiffs argue that they had only "limited opportunity to be heard prior to the deprivation." (Opp. at ECF 5.)  They have not, however, indicated what, if any, procedure should have been applied that was not.  Instead, they accuse the individual NYPD Defendants of having ignored Plaintiffs' earlier complaints and relying instead on the misrepresentations of others.  (Opp. at 5.)   As Plaintiffs see it, the NYPD Defendants acted arbitrarily in affording access to Houri and Ronen rather than preventing their access to the Premises.  (Opp. at 8 (characterizing NYPD action as "arbitrary").)  But "there *is no* constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property" by a state employee.  *Hellenic American Neighborhood Action Committee v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996) (emphasis in original); *see also Grune v. Hernandez*, No. 24-1803, 2025 WL 1416891, at *2 (2d Cir. May 16, 2025) (same).  Plaintiffs have not alleged the absence of any such procedure or stated any plausible claim for violation of procedural due process.

22

Nor does the TAC assert a substantive due process violation.  "[T]o state a claim for substantive due process, a plaintiff must demonstrate that the state action was 'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'"  *McCree*, 2025 WL 895467, at *11 (quoting *Cox v. Warwick Valley Central School District*, 654 F.3d 267, 275 (2d Cir. 2011)).  "'State action that is incorrect or ill-advised is insufficient to give rise to a substantive due process violation; rather, the action must be conscience-shocking.'"  *Id*. (quoting *Maco v. Baldwin Union Free School District*, No. 15-CV-03958, 2016 WL 4028274, at *4 (E.D.N.Y. July 26, 2016)).  Nothing in the TAC alleges actions by the NYPD Defendants that were "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Okin v. Village of Cornwall-On-Hudson Police Department*, 577 F.3d 415, 431 (2d Cir. 2009) (internal quotation marks and citation omitted).  That the police, based on the information provided by Houri and Ronen, facilitated Houri and Ronen's re-entry into the Premises despite a competing story from Carmine can hardly be found to shock the conscience.

To the extent Plaintiffs' due process claim is predicated on "false statements by a public official" (TAC at Claim XIII), or any refusal to take or disregard previous complaints by Carmine (TAC ¶ 43), those allegations do not amount to a plausible due process violation, as Plaintiffs otherwise contend.  (Opp. at ECF 5.)  As to the former claim, Plaintiffs do not allege (in either the TAC or FAC) that any NYPD Defendant made a false statement.  Rather, they allege that the NYPD Defendants *relied* on allegedly false statements made by others, namely, Nevo, Houri, and Ronen.  As to the latter, there is no constitutional right to police action or investigation.  *See Milhouse v. City of New York*,

23

No. 22-CV-8980, 2022 WL 17542103, at *3 (S.D.N.Y. Dec. 6, 2022) ("To the extent that Plaintiff asserts a substantive due process claims under Section 1983 against the City of New York and individual NYPD officers arising from their alleged failure to investigate Plaintiff's complaint … the Court must dismiss those claims").

In sum, the NYPD Defendants acted on a complaint to the police effectively asking them to resolve an emergent matter in a landlord-tenant dispute.  The NYPD Defendants did not violate Plaintiffs' due process rights by doing so.  Any deprivation of Plaintiffs' use of the Premises could have been and was resolved through the processes of Landlord-Tenant court and settlement.

## C.     Other Federal Claims (Claims X, , XII, XIV-Equal Protection, XV)

Each of Plaintiffs' additional federal law claims should be dismissed.

### 1.  Conspiracy

Claim X of the TAC purports to assert a claim for conspiracy between the various Defendants under New York common law.  As discussed below, any state claims against the NYPD Defendants must be dismissed for failure to comply with notice-of-claim requirements.  But even if the conspiracy claim is construed as one made under Section 1983, Plaintiffs fail to state a plausible claim for relief against the NYPD Defendants.

"To state a claim of conspiracy under Section 1983, a plaintiff must show: '(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'"  *Perry v. Hardy*, No. 25-CV-3314, 2025 WL 1938821, at *3 (S.D.N.Y. July 14, 2025) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  Here, "Plaintiffs allege an agreement between the tenants and NYPD

24

Defendants."  (Opp. at ECF 5; *see also id.* at ECF 8 ("Plaintiffs allege … a conspiracy among tenants, legal aid counsel, and others").)  Yet neither the TAC nor FAC allege an agreement between the police and any other Defendant (or, for that matter, between members of the NYPD), to act in concert to inflict an unconstitutional injury against Plaintiffs.  Instead, Plaintiffs allege that police acted on false information provided by others, but not that any officer knew or had reason to know the information was false, or that there was any agreement between the police and the other Defendants.  (*See* TAC ¶¶ 73, 77; Dkt. 97 at 24.)

Nor does the TAC (or FAC) assert a plausible complaint for conspiracy between and among police NYPD Defendants.  Plaintiffs allege that Sergeant Polanco investigated complaints filed by Carmine against Detective Corrado and Officer Corry but "dismissed and used" them "as a cover up."  (TAC ¶ 79.)  That "[v]ague and unsupported assertion of a conspiracy," on which the proposed FAC did not elaborate, cannot and does "not suffice to state a claim on which relief can be granted."  *Perry*, 2025 WL 1938821, at *3; *see also McDaniel v. City of New York*, 585 F. Supp.3d 503, 521 (S.D.N.Y. 2022) (dismissing § 1983 conspiracy claim because plaintiff did not allege any specific facts to suggest NYPD defendants acted pursuant to an agreement to violate plaintiff's constitutional rights).

Plaintiffs' conspiracy claim against the NYPD Defendants should be dismissed.

### 2.  Retaliation In Violation Of First Amendment

In ruling on Plaintiffs' motion to file the FAC, the Court already determined that Plaintiffs failed to assert a claim for retaliation based on exercise of their First Amendment rights.  (Dkt. 97 at 25.)  The TAC made no allegations of retaliation, and neither does the

FAC.  In their opposition, Plaintiffs suggest the police retaliated against Plaintiffs' filing of complaints.  (Opp. at ECF 6.)  That argument contradicts Plaintiffs' own allegations:  the police acted adversely to Carmine – arresting him and allowing Houri and Ronen to return to the Premises – based on the allegedly false allegations of Houri and Ronen.  (TAC ¶¶ 73, 77-78.)  Regardless, Claim XII already has been held to be futile and should be dismissed.

### 3.  Equal Protection

In Claims XIII and XIV, Plaintiffs allege in conclusory fashion that their rights to equal protection were violated.  But the TAC, as well as the FAC, are bereft of any allegations relating to an equal protection claim, and those claims should be dismissed.

"To state a claim under the Equal Protection Clause … a plaintiff must plausibly allege that the defendants acted with 'discriminatory intent or purpose.'"  *Moments v. Adams*, No. 24-CV-5973, 2025 WL 2022685, at *1 (S.D.N.Y. July 18, 2025) (quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977)).  A plaintiff must allege that the defendants "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group."  *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010) (internal quotation marks and citation omitted).

Here, the TAC does not plead any facts regarding Plaintiffs' membership to any identifiable group, let alone that the NYPD Defendants took any particular course of action because of their membership to any group.  In opposition, Plaintiffs argue that the police "selectively enforc[ed] rights in favor of tenants" while ignoring complaints by Carmine.  (Opp. at ECF 6.)  Nothing in the TAC (or FAC), however, suggests that Carmine's

interaction with the NYPD Defendants during the incidents alleged were motivated by any discriminatory intent against landlords. *See Okin*, 577 F.3d at 438 ("Proof that discriminatory intent was a motivating factor is required to show a violation of the Equal Protection Clause."). Nor can Plaintiffs state an equal protection violation predicated on "false statements" made by others (such as false statements attributed to Houri or Nevo), or a purported failure to prepare a police report. *See Carmichael v. City of New York*, 34 F. Supp.3d 252, 262 (S.D.N.Y. 2014) (in "police failure-to-serve cases, the courts consistently have required more evidence of discriminatory intent than a simple failure of diligence, perception, or persistence in a single case involving minority victims") (internal citation omitted). Accordingly, Plaintiffs' equal protection claim should be dismissed.

**D.    State Law Claims (Claims V through IX)**

The Court previously has determined that all state law claims against the NYPD Defendants cannot be maintained because Plaintiffs do not allege that they filed a notice of claim as required by New York General Municipal Law § 50-e. (Dkt. 97 at 27-28.) Even the proposed FAC did not contain such allegations. Nor can failure to file the requisite notice be cured – a notice of claim must be filed within 90 days from when the claim arose. N.Y. Gen. Mun. Law § 50-i(1)(b); *see also* N.Y. Gen. Mun. Law § 50-e(1)(a) (delineating notice-of-claim requirements); *Brown v. City of New York*, No. 18-CV-3287, 2020 WL 1819880, at *7 (S.D.N.Y. Apr. 9, 2020) ("Under New York law, a plaintiff asserting tort claims against the City or its employees must file a notice of claim within ninety days after the incident giving rise to the claim and commence the action within a year and ninety days from the date of the incident"). The 90-day period to file a notice of claim expired

27

years ago.  No pleading can make it otherwise.  Accordingly, the claims against the NYPD Defendants for violation of state law should be dismissed.

## E.      No Leave To Amend

Plaintiffs request leave to file the FAC, which they characterize as "currently pending," as it "would address the technical deficiencies defendants assert and preserve Plaintiffs' claims."  (Opp. at ECF 3.)  The FAC is not currently pending.  The Court previously provided Plaintiffs with the opportunity to file the FAC, but they failed to do so – even after receiving generous extensions of time.  (Dkt. 133.)  In any event, the flaws in Plaintiffs' claims against the NYPD Defendants are not mere "technical deficiencies" that can be cured.  As recited throughout this R&R, the allegations of the FAC do not add or change anything with respect to the viability of Plaintiffs' claims against the NYPD Defendants.  Plaintiffs already have amended their complaint three times; they forfeited their opportunity to amend a fourth time; and the amendments in the FAC do not render Plaintiffs' claims against the NYPD Defendants any less futile.  Accordingly, leave to amend should be denied.

## Conclusion

For the foregoing reasons, I recommend that the NYPD Defendants' motion be granted and the case against them dismissed with prejudice.  To the extent not discussed above, the Court has considered the Plaintiffs' arguments and found them to be either moot or without merit.

## Objections And Appeal

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections

to this Report and Recommendation.  Any party shall have fourteen (14) days to file a written response to the other party's objections.  Any such objections and responses shall be filed with the Clerk of Court, with courtesy copies delivered to the Chambers of the Honorable Dale E. Ho, United States Courthouse, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any request for an extension of time for filing objections must be addressed to the District Judge.  **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

Respectfully submitted,

_____

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: January 13, 2026
        New York, New York