UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMELIO, et al., | |
| Plaintiffs, | |
| v. | |
| HOURI, et al., | |
| Defendants. | |

22 Civ. 975 (DEH) (RWL)

**OPINION
AND ORDER**

DALE E. HO, United States District Judge:

Plaintiffs Carmine P. Amelio, Alfonso Amelio, and Paul Amelio, proceeding pro se, filed suit against Galia Houri, Eyal Ronen, Unknown Female Trespasser "Nevo," Nicholas Blasone, the Legal Aid Society, Max Reinhardt, Richard Semegram, Leiroze Mizrahi, Instalock Locksmith 304 Inc., Jonathan Corrado, Bernadette Corey, Joel Polanco, Siddiqi Law Group, Nadav Nouri, Naveed M. Siddiqi, May Hess, and Patricia Blasone alleging various state and federal claims arising from the rental of and damage to Plaintiffs' residential property in the Bronx, New York. Two groups of Defendants have appeared: (1) the "Legal Aid Defendants" (consisting of Defendant Legal Aid Society and two attorneys, Defendants Max Reinhardt and Richard Semegram) and (2) the "NYPD Defendants" (consisting of Defendants Jonathan Corrado and Bernadette Corey). A third group of Defendants has never been served (the "Unserved Defendants," consisting of Defendants Galia Houri, Eyal Ronen, Unknown Female Trespasser "Nevo," Leiroze Mizrahi, Instalock Locksmith 304 Inc., Joel Polanco, Siddiqi Law Group, Naveed M. Siddiqi, and May Hess). Three

Defendants—Nicholas Blasone, Nadav Nouri, and Patricia Blasone—appear to have been served.[1] On September 13, 2024, this Court dismissed the Legal Aid Defendants from this matter.[2]

Currently before the Court are two Reports and Recommendations (the "Reports" or the "R. & Rs.") from Magistrate Judge Robert Lehrburger. The first Report and Recommendation ("Unserved Defendants R. & R." or "Unserved Defendants Report") recommends that the Court, sua sponte, dismiss all claims against the unserved Defendants.[3] The second Report and Recommendation ("NYPD Defendants R. & R." or "NYPD Defendants Report") recommends that the Court dismiss all claims against the NYPD Defendants.[4] For the reasons stated herein, both Reports are **ADOPTED IN FULL**.

## BACKGROUND

This action is assigned to Magistrate Judge Lehrburger for general pretrial supervision and report and recommendation on dispositive motions.[5] Familiarity with the factual background and relevant procedural history of this case as set out in the Unserved Defendants Report[6] and the NYPD Defendants Report[7] is assumed.

On June 16, 2025, Magistrate Judge Lehrburger issued the Unserved Defendants Report. The parties' objections to the Report were due by June 30, 2025.[8] On the day the objections were

---

[1] *See* Nadav Houri Affidavit of Service, ECF No. 33; Nicholas Blasone Affidavit of Service, ECF No. 42; Patricia Blasone Affidavit of Service, ECF No. 44.

[2] ECF No. 115.

[3] ECF No. 141.

[4] ECF No. 172.

[5] ECF No. 16.

[6] *See generally* Unserved Defendants R. & R. at 1-6.

[7] *See generally* NYPD Defendants R. & R. at 2-11.

[8] Unserved Defendants R. & R. at 13.

2

due, Plaintiffs filed a motion for an extension of time.[9]  The Court noted that the request for an extension was untimely, however given the Plaintiffs' pro se status, granted an extension to July 21, 2025.[10]  On that date, Plaintiffs filed their objections and a motion for leave to file a Fourth Amended Complaint.[11]  NYPD Defendants and Interested Party Office of the Corporation Counsel of the City of New York ("Interested Party") filed a response,[12] to which Plaintiffs replied.[13]  On August 14, 2025, NYPD Defendants and Interested Party filed a sur-reply.[14]

On January 13, 2026, Magistrate Judge Lehrburger issued the NYPD Defendants Report. The parties' objections to the Report were due by January 27, 2026.[15]  No objections were timely filed.  On February 5, 2026—more than a week after the objections were due—Plaintiffs filed a motion seeking a three-week extension of time to file their objections.[16]  Despite the untimely nature of the request, the Court granted the application nunc pro tunc in light of Plaintiffs' pro se status, granting leave to file objections by March 5, 2026.[17]  On that date, Plaintiffs filed their objections.[18]

---

[9] ECF No. 144.

[10] ECF No. 145.

[11] Pls.' Objs. to Unserved Defendants R. & R., ECF No. 147.  Eight days later, Plaintiffs filed a "Supplemental Affirmation in Support of Objections to Report & Recommendations and Motion for Leave to File Fourth Amended Complaint." ECF No. 149.  The Court does not consider this supplemental briefing because it was not filed in a timely manner and Plaintiffs did not seek leave for an extension to file the supplemental briefing.

[12] ECF No. 148.

[13] ECF No. 151.

[14] ECF No. 159.

[15] NYPD Defendants R. & R. at 28-29.

[16] ECF No. 173.

[17] ECF No. 174.

[18] Pls.' Objs. to NYPD Defendants R. & R., ECF No. 176.

## LEGAL STANDARD[19]

When reviewing a Report and Recommendation, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[20] For dispositive matters, a district judge is required to "determine de novo any part of the magistrate judge's disposition that has been properly objected to" by any party.[21] For those portions to which no proper objection is made, a district court need only satisfy itself that there is no "clear error on the face of the record."[22]

An objection is proper when it is timely, specific, and does "not raise new arguments not previously made before the magistrate judge."[23] A district judge may not reject a party's objections by "appl[ying] an additional qualification . . . [that] requir[es] that an objection may not reiterate . . . arguments already raised before the magistrate judge."[24] But, when a party has not properly made objections, for instance, by making "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers, it] will not suffice to invoke de novo review."[25]

---

[19] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

[20] 28 U.S.C. § 636(b)(1)(C).

[21] Fed. R. Civ. P. 72(b)(3).

[22] *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 n.4 (2d Cir. 2022).

[23] *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025).

[24] *Id.* at 359-60.

[25] *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 313 (S.D.N.Y. 2009); *see also Nambiar*, 158 F.4th at 361 ("But as we explained, [clear error review] should be applied *only* when the objections are nonspecific or merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.").

## DISCUSSION

### I.    Unserved Defendants Report

As an initial matter, Plaintiffs do not object to the dismissal of Defendants Unknown Female Trespasser "Nevo" and May Hess.[26]    Plaintiffs do, however, object to the Unserved Defendants Report on several grounds: (1) it disparages pro se litigants; (2) it includes improper factual determinations; (3) it is "beyond the powers" (ultra vires) of the magistrate judge; (4) service on Defendant Polanco was valid; and (5) there is good cause to deny it.    Each is addressed in turn.

#### A.    Disparagement of Pro Se Litigants

Plaintiffs contend that the Unserved Defendants Report "continues Judge Lehrburger's pattern of [d]iscrediting Plaintiffs' medical disabilities . . . ; [m]ischaracterizing parenting responsibilities as litigation delays . . . ; [and s]electively citing *Amelio v. Piazza*, 2020 WL 5535241 (S.D.N.Y. 2020) despite its limited relevance post-2023 vacatur motions."[27]

Plaintiffs' objections are without merit.    Plaintiffs appear to suggest that Magistrate Judge Lehrburger failed to take into account Plaintiffs' medical history and childcare obligations as good cause for not serving Defendants despite repeated notice, multiple warnings of consequences for failure to serve, and the failure to request extensions of time.    Plaintiffs, however, provide no

---

[26] Pls.' Objs. to Unserved Defendants R. & R. at 2 (seeking leave to amend the complaint to "remove unserved 'Nevo' and May Hess[.]").

[27] *Id.* at 1-2.

evidence of how medical issues and childcare obligations in 2022[28] and 2023[29] justify their failure to serve Defendants in 2024 and 2025.  Further, Magistrate Judge Lehrburger *did* take Plaintiffs' medical history into account, repeatedly granting them extensions to serve Defendants after notification of these challenges—even when the documentation submitted by Plaintiffs plainly failed to justify continued delays.[30]

Plaintiffs also make mention of "post-2023 vacatur motions" related to *Amelio v. Piazza*, Nos. 19 Civ. 5944, 19 Civ. 7091, 2020 WL 5535241 (S.D.N.Y. Sep. 15, 2020).  The Court can find no evidence of such motions.  That matter and its related cases were closed on September 15, 2020, with the last docket entries occurring in 2020 and 2021.  The Second Circuit affirmed the decision.[31]  Magistrate Judge Lehrburger's citation to that case to highlight Plaintiff Carmine Amelio's history as "a vexatious litigant" with a history of filing frivolous motions and pleadings is neither selective nor limited.

---

[28] ECF No. 9 (July 7, 2022 letter stating Plaintiff Carmine Amelio "resides in New Milford, CT, where his two (2) children live and go to school and with whom he has shared physical and legal custody on an alternating weekly basis.  Plaintiffs have medical issues that limited ability and time to prosecute their various legal matter . . . .").

[29] ECF No. 18 (March 6, 2023 response to Show Cause Order stating that all Plaintiffs have "limiting chronic medical issues and disabilities affecting their ability to prosecute this case" and that Plaintiff Carmine Amelio "has been occupied fighting a custody and visitation dispute with his former spouse over the parties' two (2) minor children."); ECF No. 22 (May 24, 2023 motion to file Third Amended Complaint stating Plaintiff Carmine Amelio was "overwhelmed and under duress, including eye injury and weekly medical treatment for the past 45 days.").

[30] *See, e.g.*, ECF No. 10 (granting extension after notification of childcare obligations and medical challenges); ECF No. 21 (granting Plaintiffs leave to file a Third Amended Complaint after notification of childcare obligations and medical challenges with a clear warning that failure to serve Defendants could result in dismissal of claims); ECF No. 24 ("The court has reviewed the medical letters filed by Plaintiff; none of the letters indicate any impairment that would excuse the Plaintiff's continued failure to file an affidavit of service.  Accordingly, as Plaintiff is pro se, the Court grants Plaintiff's requested relief with a final warning.").

[31] *In re Amelio*, 857 F. App'x 665 (Mem) (2d Cir. 2021).

### B.    Improper Factual Determinations

Plaintiffs contend that Magistrate Judge Lehrburger overlooked the fact that service on Defendants Galia Houri and Eyal Ronen was proper because Plaintiff Paul Amelio personally served them in 2022, but withheld an affidavit of service pending an amended complaint, and that the amended complaint was served via mail pursuant to Fed. R. Civ. P. 4(e)(1) and N.Y. C.P.L.R. § 308(2).[32]

The Unserved Defendants Report correctly notes that "[t]he only affidavit of service for Defendants Galia Houri and Eyal Ronen attests to service solely by mail (Dkt. 51), which alone is not a proper method of service under either Federal Rule of Civil Procedure 4(e)(2) or New York Civil Practice Law and Rules § 308."[33]   Plaintiff cites to Fed. R. Civ. P. 4(e)(1), which allows service pursuant to state law in the state where the district court is located.

Looking to the law of New York, personal service must be made:

> by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served *and* by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . .[34]

"And" is an operative word here; under New York law, for service by mail to be proper, personal service must also be delivered directly.  The Court can find no evidence on the docket, nor do Plaintiffs point to any, that personal service was made upon Defendants Galia Houri and Eyal Ronen.  Moreover, Plaintiffs acknowledge in their objections that any personal service that *was*

---

[32] Pls.' Objs. to Unserved Defendants R. & R. at 2.

[33] Unserved Defendants R. & R. at 5.

[34] N.Y. C.P.L.R. § 308(2) (emphasis added).

made was of a non-operative complaint, and that an affidavit of such service was withheld.[35] Given the years that have passed since the initiation of this action, not to mention the multiple notices, warnings, and opportunities the Court has granted Plaintiffs to cure these deficiencies, Magistrate Judge Lehrburger's recommendation to dismiss based on inadequate service is not improper.

### C.    Ultra Vires Actions

Plaintiffs object to the Unserved Defendants Report as improper due to a pending recusal appeal with the Second Circuit and because Magistrate Judge Lerhburger dismissed as "frivolous" applications to proceed in forma pauperis for the purposes of filing interlocutory appeals of various orders.[36]   The recusal appeal was dismissed at the Second Circuit, sua sponte, for lack of jurisdiction on October 15, 2025,[37] so Plaintiffs' objection on this point is moot.

In any event, it is unclear to this Court how Magistrate Judge Lerhburger's dismissal of Plaintiffs' application to proceed in forma pauperis on various interlocutory appeals unrelated to the issue of delivery of service on the Unserved Defendants[38] is relevant to the Unserved Defendants Report.   But even if it *were* clear to the Court how this objection is relevant, it is misguided.  Plaintiffs cite to *Adkins v. E.I. DuPont*, 335 U.S. 331 (1948) to support their argument that Magistrate Judge Lerhburger's dismissal of Plaintiffs' applications to proceed in forma pauperis was improper.  But there, the Supreme Court held that there are "few more appropriate occasions for use of a court's discretion than one in which a litigant, asking that the public pay costs of his litigation, either carelessly or wilfully [sic] and stubbornly endeavors to saddle the

---

[35] Pls.' Objs. to Unserved Defendants R. & R. at 2.

[36] *Id.*

[37] *Amelio v. Houri*, Case No. 25-1265, ECF No. 31 (2d Cir. Oct. 15, 2025).

[38] *See* ECF No. 130 (notice of appeal from Order denying a motion for reconsideration of an Order denying a second two-week extension for Plaintiffs to move to reconsider the dismissal of Legal Aid Defendants); ECF No. 131 (notice of appeal from Order denying a motion to recuse).

public with wholly uncalled-for expense."[39]   Plaintiffs interlocutory appeals were entirely

frivolous, and Magistrate Judge Lerhburger was under no obligation to grant Plaintiffs' application

to proceed in forma pauperis for such a "wholly uncalled-for expense."

### D.    Service Validity

Plaintiffs argue that service on Defendant Joel Polanco was proper because service was

made to the 45th NYPD Precinct, which Plaintiffs allege was the precinct to which Defendant

Polanco was assigned "during key events," and because there is no evidence that he has ever

updated his professional address.[40]   These points are irrelevant.   Plaintiffs were provided with

Defendant Joel Polanco's proper address in October 2023.[41]   Plaintiffs offer no explanation as to

why service was never properly effectuated despite being on notice that (1) service to the 45th

Precinct was insufficient;[42] and (2) the correct address of Defendant Polanco was directly given to

them nearly two years before the Unserved Defendants Report was issued.[43]

Next, Plaintiffs point to four affidavits of due diligence with respect to four of the Unserved

Defendants.[44]   The first affidavit states that one attempt at serving Defendant Siddiqi Law Group

was made on July 19, 2023, but the person authorized to accept service was on vacation and would

return the following week.[45]   The second affidavit states that one attempt at serving Defendant

---

[39] *Adkins v. E.I. DuPont de Nemours & Co., Inc.*, 335 U.S. 331, 337 (1948).

[40] Pls.' Objs. to Unserved Defendants R. & R. at 2.

[41] ECF No. 59.

[42] ECF No. 136 at 2 ("[B]ecause Lt. Polanco was never properly served, [the Office of the Corporation Counsel of the City of New York] cannot undergo the process required to make representation decisions for municipal employees.").

[43] ECF No. 59.

[44] Pls.' Objs. to Unserved Defendants R. & R. at 2.

[45] ECF No. 39.

Naveed M. Siddiqi was made on July 19, 2023, but he was on vacation and would return the following week.[46]  The third affidavit states that three attempts at serving Defendant Instalock Locksmith 304 Inc. were made on July 19, July 20, and July 21, 2023 and that the business was closed on the first two attempts and was permanently closed on the third attempt.[47]  The fourth affidavit states that three attempts at serving Defendant Leiroze Mizrahi were made on July 19, July 20, and July 21, 2023 and there was no answer at the door on any attempt.[48]  Plaintiff does not explain how these attempts demonstrate good cause for failure to effect service.  "To establish good cause, a plaintiff must demonstrate that *despite diligent attempts*, service could not be made due to exceptional circumstances beyond his or her control."[49]  The evidence provided by Plaintiffs here does not establish exceptional circumstances beyond their control—typically things like a sudden illness, a natural catastrophe, or the intentional evasion of service of process.[50]  These affidavits simply demonstrate that some attempts at service were made but were unsuccessful, which does not establish "exceptional circumstances" sufficient to excuse proper service.

### E.    Good Cause

Finally, Plaintiffs argue that good cause for their failure to serve the Unserved Defendants exists because of documented medical challenges, "active evasion by Siddiqi Defendants," and that there are pending motions that moot any issues with service.[51]  The Court has already rejected

---

[46] ECF No. 40.

[47] ECF No. 41.

[48] ECF No. 43.

[49] *Deptula v. Rosen*, 558 F. Supp. 3d 73, 85 (S.D.N.Y. 2021) (emphasis added).

[50] *See Trs. of the United Plant & Prod. Workers Loc. 175 Benefits Fund v. Mana Constr. Grp., Ltd.*, No. 18 Civ. 4269, 2021 WL 4150803, at *3 (E.D.N.Y. July 30, 2021), *adopted*, 2021 WL 4147421 (E.D.N.Y. Sep. 13, 2021).  To the extent that Plaintiffs claim that Defendant Siddiqi attempted to evade service, that argument is addressed below.

[51] Pls.' Objs. to Unserved Defendants R. & R. at 2.

Plaintiffs' argument with respect to their medical challenges in 2022 and 2023 as good cause for failure to effectuate service, so it does not address this argument further.[52]

Similarly, Plaintiffs raise again the affidavits of due diligence, this time as "evidence" of evasion of service by Defendant Siddiqi, but these affidavits just show Defendant Siddiqi was on vacation when service was attempted.[53]  Plaintiffs also state that "Siddiqi has a buzzer/camera system which he uses to block process service" but provide no evidence to back that claim.[54]  The Court cannot credit this statement on its own with no actual evidence to support it.

Plaintiffs do not specify which motions would moot service issues.  To the extent Plaintiffs rely on their motion to file a Fourth Amended Complaint, that motion is discussed more fulsomely below.  But for our purposes here, the Court simply notes that that motion does not moot the issue of Plaintiffs' failure to effectuate service.

## II.    NYPD Defendants Report

Plaintiffs object to the NYPD Defendants Report because (1) it "omit[s] or distort[s]" the factual history;[55] (2) it "improperly resolves probable cause at the pleading stage;"[56] (3) it "improperly relies on materials outside the pleadings;"[57] (4) discovery has not yet occurred;[58] and (5) it ignores a proposed Fourth Amended Complaint that was filed in July 2025 when Plaintiffs sought leave to amend, which allegedly cures the complaint's deficiencies.[59]  These objections

---

[52] *See* discussion in Section I(A).

[53] *See* discussion in Section I(D).

[54] Pls.' Objs. to Unserved Defendants R. & R. at 2.

[55] Pls.' Objs. to NYPD Defendants R. & R. at 4-7.

[56] *Id.* at 7-8.

[57] *Id.* at 8-9.

[58] *Id.* at 9.

[59] *Id.* at 9-10.

apply to the NYPD Defendants Report's recommendation that Plaintiffs' false arrest and due process claims be dismissed.  The Court therefore addresses these objections in its discussion of those claims below.  These objections, however, do not apply to the NYPD Defendants Report's recommendation that Plaintiffs' conspiracy, First Amendment retaliation, equal protection, and state law claims be dismissed.  The Court, after reviewing and finding no error, clear or otherwise, in the portions of the NYPD Defendants Report recommending dismissal of those claim, adopts those portions of the Report in full.

The Court now turns to a discussion of Plaintiffs' objections to the NYPD Report's recommendations regarding their false arrest and due process claims.

A.    **False Arrest**

Plaintiffs argue the NYPD Defendants Report improperly dismisses their false arrest claim because (1) alleged facts related to Officer Hassan's involvement in the dispute were overlooked; (2) alleged facts related to Officer Corrado's guidance to Plaintiffs were overlooked; (3) alleged facts related to Defendant "Nevo" "trespassing" on the property were overlooked; (4) these questions of fact cannot be resolved at the motion to dismiss stage; and (5) there is improper reliance on materials outside the pleadings.

Plaintiffs' objections with respect to alleged facts that were supposedly overlooked all relate back to Plaintiffs' argument that the police were on notice of a dispute between Plaintiffs and Defendants Houri, Ronen, and "Nevo" regarding the occupancy of the property.  Under Plaintiffs' theory, the arrest of Plaintiff Carmine based on Defendants Houri and Ronen's allegations of an illegal eviction alone, without crediting Plaintiffs' allegations of illegal occupancy, demonstrate an absence of the requisite probable cause.  This argument fails, however, because, as Magistrate Judge Lehrburger correctly states, "the Second Circuit has held that

probable cause may be found even if a police officer has been presented with different stories from an alleged victim and the arrestee."[60]

Next, Plaintiffs argue that resolution of this claim at the motion to dismiss stage is improper because there are questions of fact about whether the arresting officer, Defendant Corey, had reason to believe Defendants Houri and Ronen were credible.[61]  This argument fails for two reasons.  First, even if the arresting officer was wrong to rely on Houri and Ronen's allegations, qualified immunity protects her from suit because the facts, as alleged, demonstrate that it "was *reasonable* for [her] to believe, *reasonably*, that plaintiff was breaking the law."[62]  The NYPD Defendants Report describes in some depth why this conclusion was reasonable, and the Court, finding no clear error with Magistrate Judge Lehrburger's analysis, need not repeat that discussion here.[63]  Second, and perhaps more crucially, Defendant Corey had probable cause to arrest Plaintiff Carmine *despite* the conflicting allegations between Plaintiffs and Defendants Houri and Ronen. Nothing in the facts alleged point to a credibility issue with Defendants Houri and Ronen independent of Plaintiffs' claims against them, and as stated above, "probable cause may be found even if a police officer has been presented with different stories from an alleged victim and the arrestee."[64]

Finally, Plaintiffs object to the NYPD Defendants Report because they believe Magistrate Judge Lehrburger improperly relied on materials outside of the pleadings in reaching the

---

[60] NYPD Defendants R. & R. at 17 (citing *Cruz v. City of New Rochelle*, No. 13 Civ. 7432, 2017 WL 1402122, at *15 (S.D.N.Y. Apr. 3, 2017)).

[61] Pls.' Objs. to NYPD Defendants R. & R. at 7-8.

[62] NYPD Defendants R. & R. at 15 (citing *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999) (emphasis in original)).

[63] *Id.* at 16-17.

[64] *Id.* at 17.

conclusion to recommend dismissal of the false arrest claim.  This objection was previously raised and given thoughtful consideration by the Magistrate Judge.[65]  Plaintiffs do not point to any direct examples of *how* the NYPD Defendants Report improperly relies on these external materials, and the Court finds that this objection is simply an "attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers.]"[66]  The Court finds no error in Magistrate Judge Lehrburger's consideration of materials that are alluded to in the operative complaint, and which were not accepted for the truth of the statements made within them.[67]

### B.    Procedural Due Process

Plaintiffs argue the NYPD Defendants Report improperly recommends dismissal of their procedural due process claim because (1) alleged facts related to the existence of a short-term lease rather than a traditional landlord-tenant lease were overlooked; (2) alleged facts related to tenant's absence from the property were overlooked; (3) alleged facts related to "trespasser's" occupation of the property were overlooked; (4) alleged facts related to the manner in which Plaintiff Carmine was arrested were overlooked; and (5) it improperly relies on materials outside the pleadings.

Here, Plaintiffs' objections with respect to the supposedly overlooked facts are apparently made in support of an argument that their property interest in the apartment was never narrowed (as the NYPD Defendants Report states[68]), and that, consequently, both the arrest of Plaintiff Carmine and the Landlord-Tenant proceedings were constitutionally defective.  In their objections,

---

[65] *See generally id.* at 9-11.

[66] *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 361 (2d Cir. 2025).

[67] NYPD Defendants R. & R. at 10.

[68] *Id.* at 21 ("[B]y choosing to rent the Premises and enter into a landlord-tenant relationship with Houri and Ronen, Plaintiffs necessarily narrowed their interest by effectively giving up absolute control over the Premises and assuming the rights and responsibilities imposed by landlord-tenant law.").

Plaintiffs fashion the agreement they had with Defendants Houri and Ronen as a "short-term Airbnb-type arrangement" as opposed to "a conventional residential lease."[69]  Plaintiffs, however, admit in the operative complaint that the unit at issue was rented to Defendants Houri and Ronan consecutively between July 2020 and at least August 2021.[70]

According to New York law, people who have occupied a dwelling unit for longer than 30 days cannot be evicted "except to the extent permitted by law pursuant to a warrant of eviction or other order of a court of competent jurisdiction or a governmental vacate order[.]"[71]  Such is the case here, where Defendants Houri and Ronen lawfully occupied the unit for over a year.  Thus, by renting the unit to Defendants Houri and Ronen for longer than 30 days, Plaintiffs' property interest in the unit *was* narrowed, and the legal process for resolving the housing disputes giving rise to this lawsuit afforded Plaintiffs with the process they were due.  Plaintiffs cannot manufacture a procedural due process claim simply because they did not initiate that process, especially when Defendants Houri and Ronen, by filing a petition in Landlord-Tenant court, initiated a process during which Plaintiffs were provided an opportunity to be heard.

The Court does not give further consideration to Plaintiffs' objection that the NYPD Defendants Report improperly relies on materials outside the pleadings given the Court's previous discussion of this objection.[72]

### C.    Substantive Due Process

Plaintiffs' objections can be construed to argue that the NYPD Defendants Report improperly dismisses their substantive due process claim because alleged facts related to Officer

---

[69] Pls.' Objs. to NYPD Defendants R. & R. at 4.

[70] Third Amended Complaint ("TAC") at ¶¶ 23-24.

[71] N.Y Real Prop. Acts. Law § 768(a) (McKinney 2019).

[72] *See* Section II(A).

15

Corrado's guidance to remove property were overlooked.  Under this theory, because "Plaintiff [Carmine] acted after direct guidance from the detective later involved in the matter, that bears directly on . . . reasonableness, fair trial, and fabrication/omission issues."[73]  In other words, Plaintiffs argue that the arrest of Plaintiff Carmine was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanies by full procedural protection."[74]  But an arrest made when officers had probable cause to effectuate it, as here,[75] is neither shocking nor egregious, and it certainly cannot be said to be arbitrary.  As stated in the NYPD Defendants Report, "[t]hat the police, based on the information provided by Houri and Ronen, facilitated Houri and Ronen's re-entry into the Premises despite a competing story from Carmine can hardly be found to shock the conscience."[76]

### D.    Other Objections

Plaintiffs also puzzlingly object to the extensive delays in this case that have resulted in a lack of discovery, despite the fact that nearly all the delays have been the result of Plaintiffs frivolous filings and often-belated motions for extensions of time.  This is not proper objection to the substance of the Report, and therefore the Court does not consider it.

In addition, Plaintiffs contend that a proposed, but never accepted, Fourth Amended Complaint, filed as a belated objection to Unserved Defendants Report, must be considered.  A more fulsome discussion of Plaintiffs' motion to amend with this proposed complaint is discussed below,[77] but for the purposes of the NYPD Defendants Report, the Court notes that it was not

---

[73] Pls.' Objs. to NYPD Defendants R. & R. at 7.

[74] *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011).

[75] *See* Section II(A).

[76] NYPD Defendants R. & R. at 23.

[77] *See* Section III(A).

timely filed[78] and that, even if accepted, nothing in the proposed Fourth Amended Complaint would cure the deficiencies discussed here.

## III.    Additional Motions

Plaintiffs' objections and reply raise two new motions[79] which the Court now addresses.

### A.    Motion to Amend

In its objections to the Unserved Defendants Report, Plaintiffs move to amend to "streamline claims against properly served defendants"; to remove Unserved Defendants Unknown Female Trespasser "Nevo" and May Hess; to add facts related to Defendants Galia Houri's and Eyal Ronen's allegations of property damage in 2021-22; to add claims related to NYPD Defendants' alleged "2024 retaliatory acts"; and to "add new facts discovered" since the filing of the Third Amended Complaint.[80]  Plaintiffs claim good cause exists to file a Fourth Amended Complaint because there would be no prejudice to Defendants and because it would "avoid duplicative litigation over service defects."[81]  Plaintiffs' motion is **DENIED**.

While "[t]he court should freely give leave [to amend] when justice so requires[,]"[82] granting leave to amend a fourth time would not serve this purpose.  As described in depth in the NYPD Defendants Report, Plaintiffs moved to file a Fourth Amended Complaint in September 2023—but despite the Court granting leave to amend, affording Plaintiffs three weeks to file a

---

[78] *See supra* n.11.

[79] A third motion, to have Magistrate Judge Lehrburger recused, is is patently unmeritorious, has previously been considered and denied, and need not be given further consideration other than for the Court to note that it is **DENIED** for the same reasons as the previous recusal motion.  *See* Memorandum Order Denying Motion for Recusal, ECF No. 125.

[80] Pls.' Objs. to Unserved Defendants R. & R. at 2-3.

[81] *Id.* at 3.

[82] Fed. R. Civ. P. 15(a)(2).

Fourth Amended Complaint, and then granting multiple extensions for them to do so, Plaintiffs never did so.[83]   On May 15, 2025, Magistrate Judge Lehrburger denied yet another motion to extend the deadline to file a Fourth Amended Complaint, stating that "Plaintiff's plea for yet more time to file their [Fourth Amended Complaint] is merely yet another instance of Plaintiffs routinely drawing out matters, seeking multiple extensions, and waiting until the due dates of filings to ask for extensions."[84]

This Court cannot disagree.  Even by the most conservative count—from the date in which Plaintiffs' 2023 motion for leave to amend was granted in September 2024 to the date in which Magistrate Judge Lehrburger denied the request for an extension in May 2025—Plaintiffs were afforded approximately eight months to file a Fourth Amended Complaint.   Given the requirements of this district that all motions to amend filed by "[a] pro se party must include a proposed amended or supplemental pleading with a motion to amend or supplement[,]"[85] the Court can find little justification for such an extensive delay.  Granting leave to amend after more than four years of litigation, when Plaintiffs have demonstrated no good faith effort to actually file such an amended complaint, would be prejudicial to the remaining defendants and would not be an efficient use of judicial resources.[86]

---

[83] NYPD Defendants R. & R. at 7-8.

[84] ECF No. 133.

[85] Local Civil Rule 15.1.

[86] Even if the Court were to consider Plaintiffs' proposed amendments, the additions would be futile, as most relate to now-dismissed Defendants, and the proposed amendments do not cure the issues discussed in the Unserved Defendants R. & R. or the NYPD Defendants R. & R.  Further, Plaintiffs do not allege with any specificity what new facts have been discovered since the filing of the Third Amended Complaint.

18

### B.    Motion for Sanctions

Plaintiffs move for sanctions against counsel for NYPD Defendants and Interested Party "for their willful concealment, obstruction of justice, and conspiracy with [Unserved Defendant] Lt. Joel Polanco to dismiss Plaintiffs' legitimate complaint against the 45th Precinct police officers, including Polanco himself."[87]  This motion does not identify any sanctionable conduct and is **DENIED**.

Moving to dismiss claims against their client by raising meritorious arguments, made in good faith, is not sanctionable conduct.  This is just the job of a lawyer representing a defendant.  Of course, a lawyer should not make *frivolous* arguments,[88] but Defendants' counsel did not do so here.  In fact, NYPD Defendants and Unserved Defendant Joel Polanco have succeeded on their motion to dismiss.  Further, the Court can find no evidence of any "misrepresentations," "willful concealment," "obstruction of justice," or "conspiracy" in the record or in Plaintiffs' motion for sanctions.  The facts Plaintiffs raise as supposed support for these claims do not demonstrate any nefarious conduct that come close to justifying sanctions.[89]

Further, Plaintiffs are warned that the complaint—in its entirety—may be dismissed if they continue to file frivolous papers and/or repeatedly violate court orders.  As noted above, Plaintiff Carmine has a history of vexatious conduct in other cases,[90] and the procedural history of this case demonstrates that this conduct persists.  "Federal courts have both the inherent power and the

---

[87] Pls.' Reply to NYPD Defs. & Interested Party Resp. to Pls.' Objs. at 1-2, ECF No. 151.

[88] The Second Circuit has noted that "Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success."  *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991).

[89] "Rule 11 sanctions should be imposed with caution . . . [and] are an extreme remedy." *Baram v. Doe*, No. 23 Civ. 1758, 2024 WL 232319, at *6 (S.D.N.Y. Jan. 22, 2024).

[90] *Amelio v. Piazza*, Nos. 19 Civ. 5944, 19 Civ. 7091, 2020 WL 5535241 (S.D.N.Y. Sept. 15, 2020).

constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."[91]  After almost four years of litigation, it is clear that Plaintiffs' have engaged in a pattern of frivolous motion practice, prolonged delays and belated requests for extensions, and otherwise vexatious conduct.  Should this conduct continue, the Court may take appropriate actions—including but not limited to sanctions, injunctions on filing without leave of the Court, and/or dismissal for failure to prosecute.

### CONCLUSION

For the reasons stated herein, the Unserved Defendants Report and the NYPD Defendants Report are **ADOPTED IN FULL**.  Unserved Defendants are **DISMISSED WITHOUT PREJUDICE** and NYPD Defendants are **DISMISSED WITH PREJUDICE**.  Defendants Nicholas Blasone, Nadav Nouri, and Patricia Blasone remain.  Plaintiffs shall, **by April 6, 2026**, file a status letter with the Court indicating how they intend to proceed with regard to the remaining defendants.  Failure to comply with Court orders may result in sanctions, including dismissal for failure to prosecute.

---

[91] *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984).

The Clerk of Court is respectfully directed to terminate Defendants Galia Houri, Eyal Ronen, Unknown Female Trespasser "Nevo," Leiroze Mizrahi, Instalock Locksmith 304 Inc., Joel Polanco, Siddiqi Law Group, Naveed M. Siddiqi, May Hess, Jonathan Corrado, and Bernadette Corey from this matter.

The Clerk of Court is respectfully requested to terminate ECF Nos. 154 and 160.

SO ORDERED.

Dated: March 20, 2026

New York, New York

_____
DALE E. HO
United States District Judge